**NATURAL GAS CLEARINGHOUSE,
Petitioner,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent,**

**United Municipal Distributors
Group, et al., Intervenors.**

**No. 96–1140.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 24, 1997.

Decided March 18, 1997.

Peter G. Esposito, Washington, DC, argued the cause for petitioner. With him on the brief was Kenneth E. Randolph.

Katherine Waldbauer, Attorney, Federal Energy Regulatory Commission, Washington, DC, argued the cause for respondent. With her on the brief were Jerome M. Feit, Solicitor, and Joseph S. Davies, Deputy Solicitor.

Michael E. McMahon argued the cause and filed the brief for intervenor Koch Gateway Pipeline Company. James H. Byrd and Pamela M. Silberstein entered appearances.

Before: WILLIAMS, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Moving natural gas through a pipeline requires energy, which is commonly, perhaps invariably, supplied by natural gas itself. Koch Gateway Pipeline Company has customarily used its shippers' own gas for these purposes, simply providing a little less gas (about two percent less) at the point of delivery than the shipper supplied at the point of receipt. In 1995 Koch filed tariff sheets under which it would give shippers an additional option—that of paying Koch in cash for the requisite fuel, at a price that Koch would post on its electronic bulletin board. The Commission approved the tariff change, see *Koch Gateway Pipeline Co.*, 73 FERC ¶ 61,-375 (1995) ("*Koch I*"), made some adjustments in response to a petition for rehearing, *Koch Gateway Pipeline Co.*, 74 ¶ FERC 61,-212 (1996) ("*Koch II*"), and denied a final petition for rehearing, *Koch Gateway Pipeline Co.*, 75 FERC ¶ 61,096 (1996).

Petitioner Natural Gas Clearinghouse is an independent marketer buying and selling natural gas, unaffiliated with any pipeline. It views the orders as representing a Thermidor in the natural gas revolution that began in 1985, turning "the competitive clock back in the direction of a far darker age ... [when] vigorous competition among many different [natural gas] suppliers was a mere academic concept." Petitioner's Brief at 9. Even assuming we had authority to check such counter-revolutionary impulses in the Commission, which of course we don't, this case presents no such issue. Finding no violation of statutes, of the Commission's regulations, or of any precept of administrative law, we deny the petition for review.

\* \* \*

In its reshaping of the regulatory environment the Commission has sought to assure

that competition at the wellhead is carried downstream to customers, undistorted by regulation of the pipelines' natural monopolies in gas transportation. A series of rules and policies requires, among other things, that pipelines carry the gas of competing natural gas vendors on a non-discriminatory basis, separate their own gas marketing from their transportation functions, and, indeed, quit the business of making "bundled" sales of gas (i.e., sales by the entity that provides the transportation). See *Order No. 636, Pipeline Service Obligations and Revisions to Regulations Governing Self–Implementing Transportation; and Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol*, 57 Fed.Reg. 13267, 13268–77 (1992), III FERC Stats. & Regs. ¶ 30,939, *aff'd but remanded for consideration of certain issues, United Distribution Cos. v. FERC*, 88 F.3d 1105 (D.C.Cir.1996); see *id.* at 1122–25 for an overall background review and summary.

A major concern behind this unbundling was that otherwise the pipelines could use their transportation monopolies to secure illegitimate advantages in gas sales. For example, they might undercharge for carrying their own gas, or provide better service for that gas, and, by burying the costs of such favoritism in higher charges to competing sellers of gas (or their vendees), could gain an artificial advantage in the gas market.[1] The Commission's actions have thus been based on the familiar proposition that a price-regulated monopoly's business activity upstream or downstream from the area it monopolizes carries a risk both of defeating the regulatory scheme (by enabling the monopolist to inflate the costs that under cost-of-service principles are recoverable from captive customers), and of impairing competition in the adjacent activity (by enabling the monopolist to use inflated cost recoveries in the regulated market to subsidize its competition in the adjacent competitive one). See, e.g., 3 Phillip Areeda & Donald F. Turner, Antitrust Law § 726e (1978).

Natural Gas Clearinghouse's essential argument is that Koch's offer of a fuel-gas option is an attempted sale of natural gas and therefore, under Order No. 636, an offer that Koch could make only through its separate, merchant affiliate. Natural Gas Clearinghouse cites no specific language in Order No. 636 that the Commission's approval of the fuel-gas option might violate; its claim is that the approval contradicts the fundamental purposes of that Order. We must sustain the Commission's interpretation of the Order if it is reasonable. See *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). But see John F. Manning, "Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules," 96 Colum. L.Rev. 612, 682 (1996) (arguing for non-deferential review). The Commission concluded that Koch's proposed option was "not a marketing service, but is an extension of its transportation service." *Koch I*, 73 FERC at 62,166.

As a matter of ordinary language FERC's approach seems unassailable. FERC defines "transportation" to include "storage, exchange, backhaul, displacement, or other methods of transportation." 18 C.F.R. § 284.1(a) (1996). Here the gas is used, by Koch itself, to provide transportation service to Koch's transportation customers, and nothing in the FERC definition suggests that energy used for transportation is not an aspect of transportation service. We inquired at oral argument whether the Commission could not allow a pipeline simply to offer a transportation rate with the fuel cost embedded in the rate, just as a railroad charges for transportation without any separate "sale" of diesel fuel to the shippers. Counsel for Natural Gas Clearinghouse acknowledged (as we think was necessary) that there would be no legal impediment to such an arrangement, and could identify no way in which Koch's fuel-gas option could impose a more severe impact on gas marketers such as Natural Gas Clearinghouse.

---

1. Because regulation will presumably have been holding the firm's rates below the profit-maximizing level, the rate increases resulting from this artificial cost inflation will not reduce the firm's profit. Such rate increases presumably would reduce profit for an unregulated monopolist, which would have selected the profit-maximizing price and quantity on the basis of its real marginal revenue and real marginal cost, and any rate increase would lower its profit.

The reasonableness of classifying compensation for fuel gas with the provision of transportation service seems confirmed by an examination of whether Koch's proposal will in fact enable Koch to engage in the sort of manipulation that is traditionally feared from vertical integration by a price-regulated monopolist. Clearinghouse argues that Koch's staff, nominally dedicated to provision of pipeline transportation, is devoting some time and resources to the various tasks associated with buying gas for "sale" into the fuel-gas submarket. Thus Koch might be seen as "inflating" the costs passed on to its captive transportation customers, and making a "sale" of gas subsidized by those customers.

But in this context it seems impossible to speak meaningfully of "shifting" costs or of cross-subsidization. Koch offers the option on a non-discriminatory basis. If it slipped fuel-gas costs into its non-fuel transportation charges, the parties that *lost* by the inflated non-fuel charges would *gain* by reduced fuel costs. As Koch's competitors would be the beneficiaries of any "cross-subsidization" of fuel gas, the supposed cost-shifting would give Koch no net advantage in the natural gas market generally. Thus the incongruity of calling fuel gas something other than part of the transportation service is underscored by the complete mismatch with the standard depiction of the menaces posed by a regulated monopoly's integration into adjacent activities.

Even if the above were completely wrong, the opportunity for distortion seems rather trivial. Clearinghouse has not laid out a scenario that suggests much opportunity for Koch to manipulate gas costs in any harmful way. The commodity is fungible and appears to be sold in rather "thick" markets in the producing areas, so that outsiders should not have great difficulty spotting any serious cost-shifting (assuming it were meaningful to talk of "shifting" costs from fuel gas to transportation service). Cf. *Koch I,* 73 FERC at 62,167 (noting that the posting on Koch's electronic bulletin board will show not only the price but its basis, which, we were informed at oral argument, has been a three-day average of the price of natural gas futures in New York). Thus, any very material undercharge for Koch's fuel gas would be immediately noticeable. Finally, fuel-gas use seems rather steadily to account for only about 3.3 percent of total natural gas consumption, so that even if Koch acquired some unfair advantage in the "market" for fuel gas for Koch, it is hard to see much likelihood of impact on the gas market as a whole. See Energy Information Administration, Monthly Energy Review, Table 4-4 (January 1997) (giving figures from which one may calculate the fraction as 3.31% in 1994, 3.24% in 1995, and 3.25% in 1996).

Thus FERC appears to have been entirely reasonable in concluding that Clearinghouse's concerns that Koch's offer of its fuel-gas option might lead to cross-subsidization are "unfounded." See *Koch II,* 74 FERC at 61,693.

■ As a fall-back position, Clearinghouse argues that even if the sale of fuel gas is a transportation function, FERC erred in not requiring that the price be set on the basis of cost, as FERC's regulations generally require for pipeline transportation service. See 18 C.F.R. § 284.7(c)(4) (1996). Here the true concern seems the opposite of petitioner's cross-subsidization claim: Koch is pictured as possibly *over*charging for fuel gas, whereas in the prior section the concern was that it might *under*price its fuel-gas "sales." In any event, as FERC noted, Koch's tariff merely gives the shipper an additional choice, beyond the always available (and concededly legitimate) one of having Koch retain a specified percentage of the shipper's gas. See *Koch II,* 74 FERC at 61,693. Thus no fuel-gas "sale" will ever occur unless its price is below the shipper's opportunity cost for its gas, which for purposes of this issue seems a convenient, self-administering concept of "cost." The Commission seems to have been entirely reasonable in rejecting Clearinghouse's demand for the imposition of stringent accounting requirements on Koch. *Id.* & n. 5.

Accordingly, the petition for review is *Denied.*