**EAST TEXAS ELECTRIC COOPERATIVE, Inc., et al., Petitioners**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent**

**Central Power and Light Company, et al., Intervenors**

No. 99–1222.

United States Court of Appeals, District of Columbia Circuit.

Argued April 10, 2000.

Decided July 25, 2000.

A. Hewitt Rose, III argued the cause for the petitioners.

David H. Coffman, Attorney, Federal Energy Regulatory Commission, argued the cause for the respondent. John H. Conway, Acting Solicitor, Federal Energy Regulatory Commission, was on brief. Jay L. Witkin, Solicitor, and Susan J. Court, Counsel, Federal Energy Regulatory Commission, entered appearances.

Clark Evans Downs argued the cause for the Intervenors. Martin V. Kirkwood was on brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Petitioners East Texas Electric Cooperative, Inc., Northeast Texas Electric Cooperative, Inc. and Tex–La Electric Cooperative of Texas, Inc. (collectively, Texas Electric) seek review of three orders of the Federal Energy Regulatory Commission (FERC, Commission) ultimately approving the open access transmission tariff the CSW Operating Companies (CSW)[1] proposed for their provision of electric power to Texas Electric, *inter alia.* Texas Electric argues that the Commission, in its Tariff Order, *Central Power & Light Co.,* 81 F.E.R.C. ¶ 61,311 (1997), accepted certain rates included in CSW's proposed rates but rejected and ordered modification of another. CSW not only responded to the Commission's directive regarding modification of the specified rate, they also eliminated a different rate which, Texas Electric argues, had been accepted and was therefore not supposed to be eliminated. The Commission accepted CSW's compliance filing in relevant part in its Compliance Order, *Central Power & Light Co.,* 85 F.E.R.C. ¶ 61,224 (1998), including the alleged rate change resulting from the elimination of the rate earlier accepted. Finally, in its Rehearing Order, *Central Power & Light Co.,* 87 F.E.R.C. ¶ 61,073 (1999), the Commission rejected Texas Electric's arguments and concluded CSW had complied with the Tariff Order directives.

Texas Electric argues, citing 16 U.S.C. § 824d, that CSW failed to justify the rate change as the Federal Power Act (Act) requires and that the Commission's acceptance, without explanation, of CSW's compliance filing and its resulting approval of CSW's elimination of the previously accepted charge (thereby effecting a rate change) also failed to satisfy the Commission's duty under the Administrative Procedure Act, 5 U.S.C. § 706(2). Texas Electric further contends the new rates unduly discriminate against it (and other CSW customers) and that the Commission violated its duty under the Act, 16 U.S.C. § 824e, to assure that rates are not unduly discriminatory.

The Commission on the other hand claims it did not accept the proposed rates in the Tariff Order and that nothing therein prohibited CSW from eliminating the rate at issue. Rather, the Commission claims that its Tariff Order makes clear the decision was left to CSW's discretion. We defer to FERC's interpretation of its Tariff Order as not limiting CSW's revised transmission tariff. We conclude, however, that the Tariff Order did not sufficiently notify Texas Electric of CSW's discretion to modify the original proposal, particularly in light of the Tariff Order's language approving the rates at issue. Hence Texas Electric's failure to seek rehearing does not bar it from raising this issue before us. Moreover, the Commission failed to explain why the revised tariff was lawful, that is, just and reasonable. Given that the revision at issue could not fairly have been anticipated by Texas Electric, the Commission erred in summarily approving that part of the Compliance Tariff without explaining whether the new rates were just and reasonable; accordingly, we remand for FERC to make that determination.

I.

The CSW System operates in two power districts: the Southwest Power Pool (SPP) and the Electric Reliability Council of Texas (ERCOT). Of the four operating companies in the CSW System, two are entirely within SPP and the other two are

---

**1.** The Central and South West Corporation, a registered public utility holding company, is comprised of four operating companies (CSW): Southwestern Electric Power Company; Public Service Company of Oklahoma; Central Power and Light Company; and West Texas Utilities Company. CSW filed a brief as intervenors in support of the Commission.

entirely within ERCOT.[2] CSW's facilities are interconnected, however, forming a single, integrated system.

In 1996 FERC addressed the rate systems of public utilities, like those comprising CSW, who are members of registered public utilities holding companies. In Order No. 888 (filed May 10, 1996), *Promoting Wholesale Competition Through Open Access Non-discriminatory Transmission Services by Public Utilities,* FERC Stats. & Regs. ¶ 31,035, 61 Fed.Reg. 21,540 (1996), codified as revised at 18 C.F.R. Pts. 35 & 385 (1999),[3] which resulted from a rule-making proceeding designed to remedy undue discrimination in the transmission of electric power, FERC required all such utilities to file a tariff permitting transmission service across the holding company's entire system at a single price. *See Transmission Access Policy Study Group,* 2000 WL 762706, at *3, *5 (D.C.Cir. June 30, 2000); *see also* Tariff Order, 81 F.E.R.C. at 62,430 (discussing Order No. 888). Thus, individual member utilities within a holding company could no longer charge separate, "pancaked" rates[4] for what is a single transmission over the holding company's system. *Id.* at 62,432. Instead, the utilities must provide the transmission under a single rate, resulting in a *de facto* reduction of the overall charge. FERC addressed the CSW System specifically, directing the utilities therein to file "a system tariff that will provide comparable service to all wholesale users on the CSW System, regardless of whether they take transmission service wholly within ERCOT or the SPP, or take transmission service between the reliability councils over the North and East Interconnections." Order No. 888, 61 Fed.Reg. at 21,595. Furthermore, FERC noted that "[i]t may be appropriate to have different rates for transmission service wholly within ERCOT or the SPP, and for service between [them]." *Id.* at 21,595 n. 422.

CSW filed a proposed transmission tariff that provided separate rates for wholly intra-ERCOT service and wholly intra-SPP service but did not provide a single CSW Systemwide rate for transmissions through both ERCOT and SPP. Thus, customers requiring service traversing the SPP–ERCOT boundary would pay pancaked rates. In its Tariff Order the Commission analyzed CSW's separate rates for the two service areas (ERCOT and SPP) and determined that the rate structures were reasonable.

> Assessing different rates for service in the different regions is reasonable. . . . [I]t is appropriate to allow CSW to adopt the Texas Commission's regional network pricing structure for services wholly in ERCOT. As a corollary, it is also reasonable for CSW to assess a single postage stamp rate for service wholly within SPP.

Tariff Order, 81 F.E.R.C. at 62,432–33. The Commission, however, then rejected the pancaked rates for service traversing

---

**2.** ERCOT operates entirely in Texas and, to a large extent, is governed by the Public Utility Commission of Texas. Although the ERCOT companies became subject to FERC jurisdiction as a result of their interconnection with the SPP companies, FERC commonly defers to the Texas transmission ratemaking methodologies within ERCOT. *See* Brief of Commission at 7; Brief of Petitioners at 5.

**3.** For the revisions and clarifications of Order No. 888, *see* 76 F.E.R.C. ¶ 61,009 (1996), 76 F.E.R.C. ¶ 61,347 (1996), and 79 F.E.R.C. ¶ 61,182 (1997), *on reh'g,* Order No. 888–A, FERC Stats. & Regs. ¶ 31,048, 62 Fed.Reg. 12,274 (1997), *on reh'g,* Order No. 888–B, 81 F.E.R.C. ¶ 61,248, 62 Fed.Reg. 64,688 (1997),

*on reh'g,* Order No. 888–C, 82 F.E.R.C. ¶ 61,046 (1998), *aff'd in part and remanded sub nom. Transmission Access Policy Study Group v. FERC,* 2000 WL 762706 (D.C.Cir. June 30, 2000).

**4.** A "pancaked" rate is equal to the sum of the rates for a single transmission of two or more utilities within a holding company's system. In other words, the customer must pay each utility's separate charge for a single transmission: here, the customer would pay both SPP and ERCOT rates for a transmission through their separate service areas but within the CSW System. *See* Brief of Commission at 11.

both areas. *See id.* at 62,433. It "require[d] CSW to revise its tariff to propose a single rate for use of the entire CSW system" and added that, "[w]hile CSW may continue to propose multiple charges, their total sum may not exceed CSW's average system cost." *Id.* In closing the Commission further described its action:

> The Commission orders:
>
> (A) CSW is hereby directed to make the changes discussed in the body of this order within 30 days of the date of this order.
>
> (B) The proposed CSW Tariff is hereby accepted for filing, as modified as directed in Ordering Paragraph (A) above, effective January 1, 1997....

*Id.* at 62,440.

CSW filed a Compliance Tariff proposing a single four-company, system-wide rate applicable both to customers served by transmissions through ERCOT and SPP and to customers accessing only SPP service.[5] The tariff also set a rate applicable to customers using only ERCOT but eliminated the comparable rate for "SPP-only" customers it had originally proposed. Texas Electric protested the Compliance Tariff's elimination of the intra-SPP rate. It argued that the Tariff Order had approved the intra-SPP rate and, therefore, CSW must justify elimination of the rate as the Act requires. In addition, Texas Electric argued that the intra-SPP rate was necessary to prevent undue discrimination in light of the intra-ERCOT rate which remained in effect and was less expensive than the system-wide rate to which SPP-only customers had become subject. In the Compliance Order the Commission focused on whether CSW had complied with the Tariff Order. The Commission found that it had: "In the [Tariff Order], we directed [CSW] to submit a single, system-wide rate, and they have done so." Compliance Order, 85 F.E.R.C.

at 61,924. Accordingly, the Commission approved elimination of the intra-SPP rate.

Texas Electric requested rehearing challenging FERC's approval of the elimination of the intra-SPP rate in the Compliance Tariff. It argued that elimination of the rate was not consistent with the Tariff Order and lacked adequate justification by CSW and adequate consideration by the Commission. In the Rehearing Order, the Commission again rejected Texas Electric's challenges because it found CSW had complied with its directive in the Tariff Order (that is, to propose a single rate for use of the entire CSW system) when it eliminated the intra-SPP rate in favor of a single-system rate. *See* Rehearing Order, 87 F.E.R.C. at 61,300. The Commission added that, if Texas Electric wished to challenge the directive, it could have done so on rehearing of the Tariff Order but not on rehearing of the Compliance Order. *See id.*

## II.

[1] "As a general matter, we will uphold FERC's factual findings if supported by substantial evidence and will endorse its orders so long as they are based on reasoned decision making." *Texaco, Inc. v. FERC*, 148 F.3d 1091, 1095 (D.C.Cir. 1998) (citing *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 814 (D.C.Cir.1998)). And if FERC interprets its own orders reasonably, we will sustain its interpretations. *See Natural Gas Clearinghouse v. FERC*, 108 F.3d 397, 399 (D.C.Cir.1997).

■ Arguing that the Tariff Order left CSW free to eliminate the multiple charges they had proposed, FERC relies on the permissive "may" in the statement that "CSW *may* continue to propose multiple charges," Tariff Order, 81 F.E.R.C. at 62,433 (emphasis added). Although FERC precedent generally confines the scope of modifications in compliance filings to the

---

5. Although Texas Electric requested rehearing on "the Commission's approval of direct assignment of the costs of transmission facility upgrades," Joint Appendix 42, it did not challenge the system-wide rates or CSW's authority to establish multiple charges.

Commission's particular directives, *see Entergy Power Mktg. Corp.*, 75 F.E.R.C. ¶ 61,282 at 61,903 (1996); *Southern Co. Servs.*, 63 F.E.R.C. ¶ 61,217 at 62,595–96 (1993), here the Commission specifically left to CSW the decision whether to "continue to propose multiple charges." 81 F.E.R.C. at 62,433. Thus, CSW's subsequent elimination of the intra-SPP rate was contemplated and in fact authorized, albeit not ordered, in the Tariff Order. FERC points to specific language supporting its interpretation of its Tariff Order as nonprescriptive with regard to proposing multiple charges, *see* Brief of Commission at 21,[6] and, finding FERC's interpretation of its own order reasonable, we must sustain it against Texas Electric's challenge. *See Natural Gas Clearinghouse*, 108 F.3d at 399.

■ Nevertheless the Tariff Order did not provide sufficient notice to Texas Electric that CSW could eliminate the approved intra-SPP rate. *See McElroy Elecs. Corp. v. FCC*, 990 F.2d 1351, 1358 (D.C.Cir.1993) ("[W]e look not at the reasonableness of the Commission's intended interpretation, but at the clarity with which the agency made that intent known."). Much of the Tariff Order indicated acceptance of CSW's proposed tariff, including the declarations in the introductory paragraph: "In this order, the Commission directs modifications to *and accepts for filing*, as modified, a joint system-wide open access transmission tariff." Tariff Order, 81 F.E.R.C. at 62,430 (emphasis added). In the Commission's concluding list of orders, it also accepted the tariff for filing conditioned on the modifications CSW were *directed* to make.[7] *See id.* at 62,440. The Commission approved

the separate intra-SPP and intra-ERCOT rates so long as their sum did not exceed CSW's average system cost. *See id.* at 62,432–33. In fact, FERC deemed the methodology used to determine separate rates "appropriate" and "reasonable." *Id.* at 62,433. One reasonable interpretation of the phrase granting CSW discretion is an indication of FERC policy toward future rate changes, as "may continue" implies future action. This interpretation is all the more reasonable if, given FERC's discussion in approving the separate, regional rates, the reader interpreted the order as accepting the proposed rates that were not subject to the directed modification. On the whole it was not unreasonable for Texas Electric to have overlooked or misread the permissive language of the Tariff Order so as to relieve it of the obligation to petition for clarification or rehearing. It is for this reason we disagree with the Commission's statement in the Rehearing Order that Texas Electric failed to preserve its challenge (thus precluding our exercise of jurisdiction) because it did not raise the objection in its petition for rehearing of the Tariff Order.

The judicial review portion of the Act provides that "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 16 U.S.C. § 825*l*(b). We have consistently rejected agency efforts to bind parties "by what the agency intended, but failed to communicate." *McElroy Elecs. Corp. v. FCC*, 990 F.2d 1351 (D.C.Cir.1993). Rather, an agency order must provide reasonable notice of its import:

> the discretion to keep or eliminate multiple charges including the SPP-only rates.
> Brief of Commission at 21 (citations omitted) (emphasis in original).

**6.** In brief the Commission argued:
As for any requirement that [CSW] must retain their intra-SPP rates, the Tariff Order spoke to that as well. The Tariff Order specifically stated that "[w]hile CSW *may* continue to propose multiple charges, their total sum may not exceed CSW's average system cost." By using the permissive "may," FERC made clear that [CSW] had

**7.** As noted earlier, proposed tariff modifications are ordinarily limited to what the Commission directs but the Commission did not direct CSW to eliminate the intra-SPP rate.

The policy requiring timely filing of motions for reconsideration is one of fairness to [FERC[8]] and to parties affected by its order; only a perversion of that policy could be used to cut off the rights of a party that filed its application in good faith, as soon as it could reasonably have become aware of the import of an [FERC] order. Endorsement of the position that the [FERC] takes would permit an administrative agency to enter an ambiguous or obscure order, wilfully or otherwise, wait out the required time, then enter an "explanatory" order that would extinguish the review rights of parties prejudicially affected.

*Sam Rayburn Dam Elec. Coop. v. Federal Power Comm'n,* 515 F.2d 998, 1007 (D.C.Cir.1975). As earlier discussed, it was not clear that the Commission could allow elimination of the intra-SPP rate (absent statutorily mandated procedures) until it did so in the Compliance Order. Texas Electric's challenge made in its request for rehearing of the Compliance Order, therefore, was not untimely. *See. MCI Telecommunications Corp. v. FCC,* 765 F.2d 1186, 1190–91 (D.C.Cir.1985) (because implication of policy did not follow from earlier order, request for rehearing of subsequent order enunciating policy was timely); *Sam Rayburn Dam,* 515 F.2d at 1007–08 (not clear until further clarification order that purchaser of electric power was "aggrieved" so application for rehearing was timely filed); *see also RCA Global Communications, Inc. v. FCC,* 758 F.2d 722, 730–31 (D.C.Cir.1985) ("We simply cannot agree that a fair reading of the Prescription Order ... permits the conclusion that [petitioner] did know or should

have known that the Commission had confronted, much less resolved, the issue [petitioner] now petitions us to review."); *cf. ANR Pipeline Co. v. FERC,* 988 F.2d 1229, 1230 (D.C.Cir.1993) ("[W]e believe that an ordinary reader familiar with the industry background would have recognized a very substantial likelihood that the order meant what the Commission ultimately said it meant.").

■ Having concluded that Texas Electric's challenge to the Compliance Order was timely, we look at its merits. The Commission's summary approval of the Compliance Tariff cannot be regarded as a finding that a modification beyond the modifications directed, that is, the new rate to which SPP-only customers were subjected, was just and reasonable.[9] Ultimately, the Commission failed to offer anything from which the court can "discern a reasoned path ... to the decision [the Commission] reached." *K N Energy, Inc. v. FERC,* 968 F.2d 1295, 1303–04 (D.C.Cir. 1992). Accordingly, we conclude the Commission's approval of the rates proposed in the Compliance Tariff was arbitrary and capricious and remand for reconsideration. *See AT&T v. FCC,* 974 F.2d 1351, 1355 (D.C.Cir.1992) ("We conclude that the Reconsideration Order is arbitrary and capricious for want of an adequate explanation and remand it for further consideration.").

For the foregoing reasons, we remand to FERC for further proceedings consistent with this opinion.

*So ordered.*

---

**8.** Instead of referring to FERC, the opinion refers to "FPC," the former Federal Power Commission and the predecessor of FERC. *See, e.g., Elizabethtown Gas Co. v. FERC,* 575 F.2d 885, 886 (D.C.Cir.1978).

**9.** While it might be argued that the mere reference to the Tariff Order was sufficient to establish that the rates accepted in the Compliance Order were reasonable because no multiple rates would be summed and yield a rate exceeding CSW's average system cost in

violation of the condition the Commission had set, *see* Tariff Order, 81 F.E.R.C. at 62,433, nonetheless we cannot agree that the Commission determined the rates reflected in the Compliance Tariff were just. For example, the Commission did not respond to Texas Electric's challenge that the elimination of the separate, intra-SPP rate constituted undue discrimination in light of the continued existence of a separate, intra-ERCOT rate.