GULF SOUTH PIPELINE COMPANY, LP, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Mississippi Valley Gas Company, et al., Intervenors.

No. 99–1424.

United States Court of Appeals, District of Columbia Circuit.

April 23, 2002.

Before EDWARDS, ROGERS, and TATEL, Circuit Judges.

*JUDGMENT*

PER CURIAM.

This case was heard on the petition for review of three orders of the Federal Energy Regulatory Commission. The court has determined that the issues presented occasion no need for an opinion. *See* D.C.

Cir. Rule 36(b). For the reasons set out in the accompanying memorandum, it is

ORDERED that the petition for review is hereby denied.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

*MEMORANDUM*

Petitioner seeks review of the orders of the Federal Energy Regulatory Commission denying its proposal to charge market-based rates for certain natural gas transportation services. The Commission set for hearing the question of whether petitioner lacked market power over those services within its service area, subject to the policies and guidance developed in Docket No. RM95–6–000. The Policy Statement developed in that docket set forth the steps for evaluating pipeline proposals to charge market rates. Thus, to demonstrate a lack of market power, petitioner had to show that there were sufficient good alternatives for its customers within the relevant product and geographic markets, or that there were conditions in place to mitigate the potential exercise of market power. The Policy Statement defined "good alternatives" as substitute products that compete adequately in terms of availability, price, and quality with the product offered by the applicant within the relevant market.

The Commission found that petitioner failed to meet its burden of proof to show that it lacked market power. In particular, it failed to define properly the relevant product market. Because the Commission is entitled to deference in its determination of the relevant market, *see Louisiana Energy and Power Auth. v. FERC*, 141 F.3d

364, 369 (D.C.Cir.1998), and its findings are supported by substantial evidence, *see Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *East Texas Elec. Coop. v. FERC*, 218 F.3d 750, 753 (D.C.Cir.2000); 15 U.S.C. § 717r(b), we deny the petition.

Key to our disposition is the Commission's finding that contrary to petitioner's assertion, petitioner's service to its firm transportation ("FT") and interruptible transportation ("IT") customers was not such that the latter service was available soon enough, at a price that was low enough, and of a quality high enough to treat it as a substitute for FT service. Beyond petitioner's evidence on which the administrative law judge relied, the evidence showed that during the winter of 1995–96, capacity on petitioner's pipeline was fully subscribed. Petitioner's evidence failed to show either the amount of unsubscribed capacity existing on its system during peak periods or that its pipeline was undersubscribed year round. Hence, the quality of petitioner's IT service is not comparable to that of its FT service, and the two products do not constitute apt substitutes for one another. Because petitioner's general statements did not suffice to support combining FT and IT as a single product market, the Commission could properly discount the rest of petitioner's evidence and conclude that petitioner failed to meet its burden to justify market pricing. *Cf. Louisiana Energy*, 141 F.3d at 369.

Petitioner's effort to challenge the Commission's reliance on its Policy Statement is unavailing. On rehearing the Commission stated—and petitioner does not dispute—that its product market determination was a standard part of any market power analysis, and that the Commission would have "consider[ed] this issue even if the Policy Statement had never issued."

Nor was the Commission unreasonable in rejecting petitioner's approach based on the perspective of its IT customers; as the Commission stated with regard to FT customers who represent about 25% of the volume on petitioner's system, this distinct group of customers relies on FT service because "they must have gas" and cannot depend on IT service given bottlenecks, capacity constraints, full subscription during peak periods, and intermittent unavailability of excess capacity throughout the year. Petitioner did not base its request for market rates on a separate IT market.