CITY OF NEPHI, UTAH, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

Colorado Interstate Gas Company, et al., Intervenors.

No. 93–1663.

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1998.

Decided June 23, 1998.

---

Charles F. Wheatley, Jr. argued the cause and filed the briefs for petitioner. Timothy P. Ingram entered an appearance.

Larry D. Gasteiger, Attorney, Federal Energy Regulatory Commission, Washington, DC, argued the cause for respondent, with whom Jay L. Witkin, Solicitor, Washington, DC, and Susan J. Court, Special Counsel, Alexandria, VA, were on the brief. Joel M. Cockrell, Attorney, entered an appearance.

Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The City of Nephi, Utah ("Nephi"),[1] petitions for review of two orders of the Federal Energy Regulatory Commission ("Commission" or "FERC")[2] that approve tariff revisions filed by the Questar Pipeline Company

---

1. Nephi was the first municipal distributor of natural gas in Utah. It is the only local distribution company on Questar's system that is not affiliated with Questar and it is Questar's only small "firm" transportation customer. "Firm" transportation service is guaranteed, rather than interruptible. See 18 C.F.R. § 284.8(a)(3) (1997).

2. *Questar Pipeline Co.*, 62 F.E.R.C. ¶ 61,192 (1993) ("First Order"), *reh'g granted and denied*, 64 F.E.R.C. ¶ 61,157 (1993) ("Second Order").

("Questar").[3] The revisions reflect a new rate design, as required by Order No. 636.[4] *See* 18 C.F.R. § 284.8(d) (1997). They do not, however, provide a one-part volumetric ("discount") rate [5] for small customers as requested by Questar's only small customer, Nephi. Nephi contends that in refusing to order Questar to mitigate the effects of its rate revisions by offering a discount rate, the Commission mistakenly viewed Order No. 636 as barring discount rates on pipelines that did not offer them prior to Order No. 636 even though Order No. 636 did not address whether *new* small distribution customers are entitled to a discount rate. Nephi further contends that the Commission's decision was inconsistent with its own policies and unduly discriminatory, treating Nephi differently than small customers receiving discount rates from other pipelines. Because Order No. 636 only requires the grandfathering of existing small customer discount rates and Questar never offered such a rate prior to Order No. 636, and because Nephi failed to show that its cost increase would trigger mandatory mitigation under Order No. 636 and failed to preserve its other contentions

for review, we deny in part and dismiss in part its petition.

## I.

Following enactment of the Natural Gas Policy Act of 1978,[6] the Commission began to restructure its regulations to enable the market to play a greater role in determining the supply, demand, and price of natural gas. *See United Distrib. Cos. v. FERC,* 88 F.3d 1105, 1122–23 (D.C.Cir.1996). As part of this restructuring, the Commission issued Order No. 636, effective May 18, 1992, "to ensure that all shippers have meaningful access to the pipeline transportation grid, so that willing buyers and sellers can meet in a competitive, national market to transact the most efficient deals possible." Order. No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,393. To achieve this goal of promoting a free market in gas transportation, the Commission required interstate pipelines to adopt a straight-fixed-variable (SFV) rate design.[7] *See* Order No. 636–C, 78 F.E.R.C. ¶ 61,186 at 61,766; 18 C.F.R. § 284.8(d); *see also* 18 C.F.R. §§ 214(b)(1), (b)(3)(ii)(B) (1995) (rescinded).

3. "Questar is a natural gas transmission company that does business in Colorado, Utah and Wyoming." First Order, 62 F.E.R.C. ¶ 61,192 at 62,288.

4. Order No. 636, *Pipeline Serv. Obligations and Revisions to Regulations Governing Self–Implementing Transp. Under Part 284 of the Comm'n's Regulations, and Regulation of Natural Gas Pipelines After Partial Wellhead Decontrol,* ·F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 (1992), *order on reh'g,* Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 (1992), *order on reh'g,* Order No. 636–B, 61 F.E.R.C. ¶ 61,272 (1992), *aff'd in part, rev'd in part, United Distrib. Cos. v. FERC,* 88 F.3d 1105 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1723, 137 L.Ed.2d 845 (1997), *on remand,* Order No. 636–C, 78 F.E.R.C. ¶ 61,186 (1997).

5. In contrast to a typical firm transportation rate that is composed of a reservation charge (based on the maximum quantity of gas reserved for shipping under the contract) and a usage charge (based on actual daily quantities shipped), *see* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,431, a one-part volumetric ("discount") rate combines both elements into one usage charge payable when a customer actually ships gas, *see* 18 C.F.R. § 284.7(c)(1) (1997), and reflects an "imputed load factor" that is higher

than the customer's anticipated use of the pipeline, *see Panhandle Eastern Pipe Line Co. v. FERC,* 881 F.2d 1101, 1115 (D.C.Cir.1989). The "load factor" is the ratio of average daily demand to maximum daily demand. *See Columbia Gas Transmission Corp. v. FERC,* 628 F.2d 578, 584 n. 19 (D.C.Cir.1979). The higher the "load factor," the lower the per unit cost to the low load (small) customer. *See Public Serv. Comm'n of N.Y. v. FERC,* 813 F.2d 448, 452 n. 3 (D.C.Cir. 1987); *Panhandle Eastern Pipe Line,* 881 F.2d at 1115–16.

6. Pub.L. No. 95–621, 92 Stat. 3350 (1978) (codified as amended at 15 U.S.C. §§ 3301–3432 (1994)).

7. Under an SFV rate, all of a pipeline's fixed costs are assigned to its reservation charge, and only variable costs are assigned to its usage charge. *See* Order No. 636, F.E.R.C. Stats. & Regs. ¶ 30,939 at 30,434, 30,436; 18 C.F.R. § 284.14(b)(3)(ii)(B) (1995) (rescinded). The court affirmed the Commission's determination that this rate design is just and reasonable. *See United Distrib. Cos.,* 88 F.3d at 1161–70; First Order, 62 F.E.R.C. ¶ 61,192 at 62,293 (citing Order No. 636, F.E.R.C. Stats. & Regs. ¶ 30,939 at 30,434). The SFV rate design, however, results in higher costs for small customers. *See United Distrib. Cos.,* 88 F.3d at 1170–71.

Recognizing that the switch to SFV rates could result in cost shifting among pipelines' customers, however, the Commission ordered pipelines to adopt measures to mitigate significant cost increases. *See* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,435–36; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,599–600; *United Distrib. Cos.*, 88 F.3d at 1171; 18 C.F.R. § 284.14(b)(3)(ii)(B), (iv)(A) (1995) (rescinded). Specifically, the Commission required pipelines that offered a discount rate to small customers on May 18, 1992, to continue to do so, *see* Order No. 636–B, 61 F.E.R.C. ¶ 61,-272 at 62,020; 18 C.F.R. § 284.14(b)(3)(iv)(A) (1995) (rescinded), in order to preserve the status quo for small customers paying a discount rate at the time Order No. 636 took effect. *See United Distrib. Cos.*, 88 F.3d at 1171. Additionally, the Commission required pipelines to use "some measure, such as seasonal contract quantities," to avoid significant cost shifting and to consider enlarging the class of customers eligible for any existing small customer rates. *See* Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,599–600. If the transition to SFV rates resulted in an increase of ten percent or more for any particular class of customers, the Commission required pipelines to phase in the new rate design for those customers over a four-year period. *See* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,435–36; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 30,603–04; *United Distrib. Cos.*, 88 F.3d at 1171; 18 C.F.R. § 284.14(b)(3)(ii)(B) (rescinded). The Commission expected the need for such mandatory mitigation would be minimal, *see* Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,604, and viewed the ten per-cent, four-year mitigation requirement as necessary to avoid "rate shock" to a pipeline's historic customers rather than as a permanent shield to increased costs. *See* Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,604; *United Distrib. Cos.*, 88 F.3d at 1173.

On October 1, 1992, Questar filed revised tariffs to comply with Order No. 636. *See* First Order, 62 F.E.R.C. ¶ 61,192 at 62,288. The revised tariffs provided that Questar would charge firm transportation customers an SFV rate as required by Order No. 636. *See id.;* 18 C.F.R. § 284.8(d). During review of Questar's revised tariffs, Nephi asked the Commission to require Questar to adopt a discount rate for small customers in order to save Nephi from significant rate increases resulting from the shift to SFV. *See* First Order, 62 F.E.R.C. ¶ 61,192 at 62,293. The Commission denied Nephi's request. Order No. 636 requires a pipeline to offer a discount rate to small customers only if it offered such a rate on May 18, 1992. *See id.* at 62,294; 18 C.F.R. § 284.14(b)(3)(iv)(A) (1995) (rescinded). "Since Questar did not have a small customer rate schedule in effect prior to its Order No. 636 compliance filing, it need not create a new class of customer now," the Commission explained. First Order, 62 F.E.R.C. ¶ 61,192 at 62,294. The Commission also noted that it had previously rejected the same request from Nephi. *See id.* at 62,294 n. 24.[8]

Nephi sought rehearing of the Commission's denial of a small customer discount rate on the grounds that, first, "a variety of changes mandated by Order No. 636 will increase the transportation costs for small

---

**8.** Prior to Order No. 636, Questar sought the Commission's approval of interim rates for the period from November 1, 1991, until Order No. 636 took effect. *See Questar Pipeline Co.*, 61 F.E.R.C. ¶ 61,180, 61,650 (1992) ("Settlement Order"). Nephi opposed the interim rates, asserting that they would lead to inequitable increases in costs, and requested that the Commission order Questar to offer a discount rate for mitigation purposes. *See id.* at 61,653. In response, Questar offered to decrease Nephi's contract demand temporarily. *See Questar Pipeline Co.*, 60 F.E.R.C. ¶ 63,015, 65,176 (1992). The Commission, noting that Nephi did not contend that the revised rate design was unjust or unrea-sonable overall but rather only sought mitigation of its cost increases, found that Questar's offer would adequately mitigate Nephi's cost increases and denied Nephi's request for a discount rate. *See* Settlement Order, 61 F.E.R.C. ¶ 61,180 at 61,654–55. In addition, the Commission indicated that when it reviewed Questar's Order No. 636 compliance filings, it would consider whether it was necessary to mitigate any "future" Order No. 636–related increases. *Id.* It thus approved the interim rates as just and reasonable, subject to Questar's mitigation offer. *See id.* at 61,656. Nephi did not petition for review of the Settlement Order.

customers," Second Order, 64 F.E.R.C. ¶ 61,-157 at 62,276, and, second, Questar's mitigation measures for the interim rates were irrelevant to Nephi's long-term need for a discount rate, *see id.* The Commission reaffirmed that Questar need not offer a small customer discount rate. In issuing Orders No. 636 and 636–A, the Commission recognized that the shift to SFV rates might lead to increased costs for small customers and required pipelines to mitigate any significant increases. *See id.* at 62,277. The Commission found, however, that the shift to SFV rates would cause Nephi's costs to increase by a maximum of 3.5%, "significantly less than the 10% guideline established by the Commission for requiring cost minimization techniques." *Id.* Moreover, Order No. 636 required small customer discount rates only on pipelines that had offered them on May 18, 1992. *See id.* at 62,277 & n. 23.

## II.

Nephi contends that the Commission misapprehended the scope of Order No. 636 in rejecting its request for a discount rate because Order No. 636 does not bar discount rates on pipelines that did not offer them on May 18, 1992. Emphasizing that it became Questar's customer in December 1991, shortly before Order No. 636 was issued, Nephi maintains that the issue of whether it is entitled to pay a small customer discount rate cannot be resolved under the Commission's grandfathering provision because Nephi was too new a customer to be part of the status quo that the Commission sought to preserve. While it is true that Order No. 636 does not bar discount rates for pipelines that had none on May 18, 1992, neither does it require them. *See* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at

30,411; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,600. Instead, Order No. 636 provides several measures to mitigate the effect of significant cost shifts caused by the adoption of SFV rates, including a requirement that pipelines phase in SFV rates over four years for any historic customer class facing a cost increase of ten percent or more. *See* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,435–36; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,599–600; *United Distrib. Cos.*, 88 F.3d at 1171; 18 C.F.R. § 284.14(b)(3)(ii)(B) (1995) (rescinded). While a small customer discount rate is an appropriate mitigation method during a phase-in period, *see* Second Order, 64 F.E.R.C. ¶ 61,157 at 62,277; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,950 at 30,600, mitigation is mandatory only where cost increases meet the ten percent threshold, *see* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,436; Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,-950 at 30,603–04; Order No. 636–B, 61 F.E.R.C. ¶ 61,272 at 62,016; 18 C.F.R. § 284.14(b)(3)(ii)(B)(1995) (rescinded).

Nephi presented no evidence to the Commission that its costs would increase by ten percent or more. The Commission found that Nephi's costs would increase by a maximum of 3.5% as a result of Questar's shift to SFV rates. *See* Second Order, 64 F.E.R.C. ¶ 61,157 at 62,277. Nephi did not seek rehearing of this finding and offers no reasonable grounds for failing to do so. Hence, the court lacks jurisdiction to consider a challenge to this finding. *See* 15 U.S.C. § 717r(b) (1994); *United Distrib. Cos.*, 88 F.3d at 1163, 1170 (citing *ASARCO, Inc. v. FERC*, 777 F.2d 764, 773–75 (D.C.Cir.1985)).[9]

9. Nephi also failed to preserve this contention for review by the court. Nephi argued in its initial protest filing before the Commission that in determining whether mitigation was necessary, the Commission should compare Questar's rates prior to November 1, 1991, with those proposed in compliance with Order No. 636. *See* First Order, 62 F.E.R.C. ¶ 61,192 at 62,293. However, Nephi did not challenge the Commission's rejection of this argument until its reply brief. *See* Reply Brief of Petitioner at 17. Hence, its challenge comes too late even for the court to consider it. *See Rollins Envtl. Servs. (NJ) Inc. v. EPA,*

937 F.2d 649, 653 n. 2 (D.C.Cir.1991). By merely informing the court in the statement of facts in its opening brief that the Commission had "compared the new SFV rates with Questar's [interim] rates and not the overall change from [the November 1, 1991, rates]," *see* Brief of Petitioner at 11, Nephi failed properly to raise this argument, *see Rollins,* 937 F.2d at 653 n. 2.

Even had Nephi addressed the challenge in its initial brief, however, it would fail. In evaluating the need to mitigate the impact of Order No. 636, the Commission requires a comparison be-

Based on the Commission's determination of Nephi's cost increase, it follows that the Commission engaged in reasoned decision-making supported by the record in determining that mitigation of the effect on Nephi of the transportation rate design provisions of Order No. 636 was not required. *See Koch Gateway Pipeline Co. v. FERC,* 136 F.3d 810, 814 (D.C.Cir.1998) (internal citations omitted).

Nephi also contends that two policy reasons, distinct from mitigation, make clear why the Commission should require a small customer discount rate for Questar. These policy reasons underlie the Commission's approval of small customer discount rates on other pipelines, Nephi asserts (without citation). Yet neither policy issue is properly before the court.

■ First, in its initial protest of Questar's filing, Nephi argued that under the "equality principle" embodied in Order No. 636, *see* Order No. 636, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,939 at 30,414, the Commission should require a small customer discount rate in order to enable Nephi to "compete on a level playing field" with Mountain Fuel, Questar's wholly-owned affiliate. *See* Protest & Comments of Nephi at 8. Nephi dropped this argument in its request for rehearing, however, and instead maintained that "[t]he issue here is whether [discount] rates is [sic] necessary to mitigate the cost-shifting that will occur under . . . Order Nos. 686[sic], *et al."* Request for Rehearing or Reconsideration of Nephi at 10; *see also id.* at 3, 4–5. Because Nephi did not mention the "equality principle" or the need for a "level playing field" in its request for rehearing, and specifically limited its rehearing request to the mitigation issues, the court lacks jurisdiction to consider these non-mitigation-related issues. *See* 15 U.S.C. § 717r(b); *United Distrib. Cos.,* 88 F.3d at 1163 (citing *ASARCO,* 777 F.2d at 773–75).

■ Second, Nephi contends that small customers need a discount rate because they often have less experience and opportunity than large customers to deal with the operational and rate changes put into place by Order No. 636. To the extent Nephi contends that all small customers need a discount rate to mitigate the impact of Order No. 636, its contention is an impermissible collateral attack on Order No. 636; the 60–day time limit for challenges, *see* 15 U.S.C. § 717r(b), has long since expired. The Commission decided in Order No. 636 that automatic continuation of small customer discount rates would be required only to maintain the status quo for customers already paying discount rates. *See* Order No. 636–A, F.E.R.C. Stats. & Regs. (CCH) ¶ 30,-950 at 30,600. Challenges to this decision were appropriate during the Order No. 636 proceedings but fall outside of the court's jurisdiction here. *See Georgia Indus. Group v. FERC,* 137 F.3d 1358, 1363 (D.C.Cir.1998).

■ To the extent Nephi contends that Questar is unique among pipelines that lacked a small customer discount rate on May 18, 1992, and consequently that the Commission should have ordered a small customer discount rate even though its regulations do not require one, Nephi failed to raise this contention timely for review. Although not an impermissible collateral attack, *see Transwestern Pipeline Co. v. FERC,* 988 F.2d 169, 174 (D.C.Cir.1993) (citing *Panhandle Eastern Pipe Line Co. v. FCC,* 907 F.2d 185, 188 (D.C.Cir.1990)), Nephi first addressed this issue in its reply brief, citing *Transwestern Pipeline Co.,* 988 F.2d at 173, and arguing that its situation is special because "Nephi constituted the first small customer on Questar's system at or near the time of Order No. 636." *See* Reply Brief of Petitioner at 7–11. Viewed in this light, the second policy argument was not properly

---

tween "the pipeline's last approved cost classification method and rate design," here Questar's interim rates, and the rates under Order No. 636. Second Order, 64 F.E.R.C. ¶ 61,157 at 62,276; *see* 18 C.F.R. § 284.14(b)(3)(ii) (1995) (rescinded). The Commission found that under this formula Nephi's rates will increase by a maximum

of 3.5%, *see* Second Order, 64 F.E.R.C. ¶ 61,157 at 62,277, and Nephi does not contend that the Commission's calculation is plainly erroneous or inconsistent with its regulation, *see Bluestone Energy Design, Inc. v. FERC,* 74 F.3d 1288, 1292 (D.C.Cir.1996).

presented to the court. *See Rollins,* 937 F.2d at 653 n. 2.

In view of the fact that neither of Nephi's policy arguments is properly before the court, we dismiss those portions of Nephi's petition. We note, however, that Nephi appears to have misinterpreted the Settlement Order, *see supra* note 8, to imply that the Commission would review Questar's overall rate structure as it affects small customers during Questar's Order No. 636 compliance proceedings. For example, Nephi states that the Commission "expressly deferred the issue as to Nephi's request for a [discount] rate to Questar's specific restructuring docket under Order No. 636." Reply Brief of Petitioner at 2; *see also id.* at 12. Yet the Commission's plan to consider "future restructuring-related increases" in the compliance proceedings, Settlement Order, 61 F.E.R.C.¶ 61,180 at 61,654–55, did not hint of an intention to use those proceedings to review the overall justness and reasonableness of Questar's lack of a small customer discount rate. *See id.* The question of whether a pipeline has complied with Order No. 636 is not so broad. *See* 18 C.F.R. § 284.14(b)(1). Instead, Nephi could only have ·complained that the lack of a small customer discount rate is generally unjust and unreasonable during the Settlement proceedings, where it instead only sought mitigation by any effective means, *see* Settlement Order, 61 F.E.R.C. ¶ 61,180 at 61,654–55, or in a timely request for rehearing of the Settlement Order. Alternatively, Nephi could initiate a proceeding under § 5 of the Natural Gas Act [10] (or intervene if the Commission should initiate a § 5 proceeding), *see* 15 U.S.C. § 717d(a) (1994); *Minneapolis Gas Co. v. Federal Power Comm'n,* 294 F.2d 212, 214 (D.C.Cir.1961), or press its complaint when Questar next seeks to revise its rates under § 4 of the Natural Gas Act, *see* 15 U.S.C. § 717c(d) & (e) (1994).

■ Finally, Nephi contends that the Commission's refusal to order a small customer discount rate is unduly discriminatory because it treats Nephi differently than small customers on pipelines that offer discount rates. Nephi analogizes this claim to a challenge to Order No. 636 where the court concluded that in Order No. 636–B the Commission had failed to justify its decision to require pipelines to offer no-notice transportation service only if they offered firm sales service on May 18, 1992. *See United Distrib. Cos.,* 88 F.3d at 1136–37. The problem, however, is that Nephi's charge of undue discrimination against small customers that did not pay a discount rate on May 18, 1992, had to be made *during* review of Order No. 636, *see* 15 U.S.C. § 717r(b); *Georgia Indus. Group,* 137 F.3d at 1363–64, as, indeed, was the allegedly analogous challenge on which Nephi relies. Consequently, because Nephi is making an impermissible collateral attack on Order No. 636, the court lacks jurisdiction to review its contention of discriminatory treatment.

Because the Commission's refusal to order Questar to provide a small customer discount rate during its Order No. 636 compliance proceedings was reasoned and supported by the record, we deny Nephi's petition for mitigation and dismiss the remainder of the petition.

---

10. Ch. 556, 52 Stat. 821 (1938) (codified as amended at 15 U.S.C. §§ 717–717w (1994)).