# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 17, 2005          Decided July 22, 2005

No. 03-1252

SOUTHERN COMPANY SERVICES, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

WILLIAMS POWER COMPANY INC.,
INTERVENOR

———

Consolidated with
04-1269

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Andrew W. Tunnell* argued the cause for petitioner. With him on the briefs was *Jennifer M. Buettner*.

*Dennis Lane*, Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief was *Cynthia A. Marlette*, General Counsel.

*Alex A. Goldberg* was on the brief for intervenor.

Before: GINSBURG, *Chief Judge*, and TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Petitioner Southern Company Services, Inc., an agent for five electric utilities, challenges orders of the Federal Energy Regulatory Commission (FERC) that rejected two of Southern's agreements to roll over transmission service. FERC rejected the agreements because they limited the ability of Southern's customers to roll the agreements over again upon their expiration. According to FERC, any restrictions that a transmission provider wants to impose on rollover rights must be included in the original service agreement between the parties, not in the rollover agreements themselves. Southern argues that FERC did not announce this "original agreement" requirement until after Southern entered into the relevant original service agreements, and that applying it to those agreements is therefore arbitrary and capricious. FERC contends that the requirement was contained in two industry-wide orders issued prior to the execution of Southern's original service agreements -- Order Nos. 888 and 888-A -- and that Southern's objections thus are untimely collateral attacks on those orders.

There are two separate agreements at issue here: one between Southern and Williams Energy Marketing & Trading Company, and another between Southern and Oglethorpe Power Corporation. We conclude that Southern's petition regarding the Williams orders is moot because the Williams agreement has since expired. We conclude that Southern's petition regarding the Oglethorpe orders, however, is neither moot nor a collateral attack on Order Nos. 888 and 888-A. And because we find that FERC's original agreement requirement was not contained in either Order No. 888 or Order No. 888-A, and FERC offers no

other reason why the requirement is properly applied to the Oglethorpe agreement, we vacate the Oglethorpe orders as arbitrary and capricious.

I

In 1996, FERC issued an order, widely known as "Order No. 888," that restructured the wholesale electric power market by requiring all jurisdictional public utilities to unbundle wholesale electric power services and to provide open-access nondiscriminatory transmission services. *See Promoting Wholesale Competition Through Open Access Nondiscriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, FERC Stats. & Regs. ¶ 31,036 (1996), 61 Fed. Reg. 21,540, *on reh'g*, FERC Stats. & Regs. ¶ 31,048, 62 Fed. Reg. 12,274 ("Order No. 888-A"), *on reh'g*, 81 F.E.R.C. ¶ 61,248 (1997) ("Order No. 888-B"), *on reh'g*, 82 F.E.R.C. ¶ 61,046 (1998) ("Order No. 888-C"), *aff'd*, *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667 (D.C. Cir. 2000), *aff'd sub nom. New York v. FERC*, 535 U.S. 1 (2002).

Among its numerous provisions, Order No. 888 generally requires utilities to allow their firm transmission customers to roll over service agreements[1] that have a duration of one year or longer. *See* Order No. 888, FERC Stats. & Regs. ¶ 31,036, at 31,665 ("[A]ll firm transmission customers . . . , upon the expiration of their contracts or at the time their contracts become subject to renewal or rollover, should have the right to continue to take transmission service from their existing transmission provider."). This provision gives those customers a "limited

---

[1]"A service agreement is a type of form contract that sets out the contract terms between the parties to a particular service transaction." FERC Br. at 6 n.3.

right of first refusal" to "match the rate offered by another potential customer." *Id.* Order No. 888-A, which addressed petitions for rehearing and clarification of Order No. 888, announced the following exception to this rule:

> [I]f a utility provides firm transmission service to a third party for a time until native load needs the capacity, it should specify in the contract that the right of first refusal does not apply to that firm service due to a reasonably forecasted need at the time the contract is executed.

Order No. 888-A, FERC Stats. & Regs. ¶ 31,048, at 30,198. In other words, transmission providers can limit customers' rollover rights if they so specify "in the contract." *Id.*

In *Nevada Power Co.*, issued on December 20, 2001, FERC used new language to describe how a provider should specify the reservation of transmission capacity, stating that "such reservations for native load should be included *in the original transmission service agreement*." 97 F.E.R.C. ¶ 61,324, at 62,492 (emphasis added). The following year, FERC issued a Notice of Proposed Rulemaking that sought to change the wording of the pro forma tariff -- originally issued as part of Order Nos. 888 and 888-A -- to incorporate this "original agreement" requirement. *Remedying Undue Discrimination Through Open Access Transmission Service and Standard Electricity Market Design, Notice of Proposed Rulemaking*, 100 F.E.R.C. ¶ 61,138, ¶¶ 121-23, app. A (2002).

Southern is a transmission provider, and two of its agreements form the basis of the disputes here. In October 2001, Southern and Oglethorpe signed a contract for firm transmission service to go into effect on December 1, 2001 and expire one year later. Oglethorpe sought to roll over the

agreement before it expired, and in response Southern filed an executed rollover agreement with FERC on December 20, 2002. The rollover agreement included a provision conditioning Oglethorpe's right of first refusal -- i.e., its right to demand future rollovers -- on (inter alia) the "availability of sufficient transmission capacity after . . . [specified other] [c]ustomers exercise their rights to transmission service" and "after the allocation of capacity to meet the Transmission Provider's native load needs." *Southern Co. Servs., Inc.*, 103 F.E.R.C. ¶ 61,117, at 61,371 (2003) ("*Oglethorpe Order*"). On May 2, 2003, FERC accepted the filing but required Oglethorpe to remove the limitation on rollovers, stating: "Since issuing Order Nos. 888 and 888-A, the Commission has consistently reaffirmed" that "any limitations to rollover rights must be stated clearly in the original transmission service agreement." *Id.* Because the rollover service agreement submitted by Southern added "language that was not in the original service agreement," the limiting language was deemed unacceptable. *Id.*

On May 30, 2003, Southern submitted a compliance filing under protest, along with a petition for rehearing that challenged the "original agreement" requirement. Southern contended that the requirement was a new policy, first announced in *Nevada Power*, and that it was arbitrary and capricious to apply it retroactively where a transmission provider -- like Southern -- had entered into an original service agreement before that case. FERC disagreed, insisting that the requirement was not new, and that Southern's request for rehearing was "basically a collateral attack on the Commission's rollover rights policy as established in Order No. 888." *Southern Co. Servs., Inc.*, 108 F.E.R.C. ¶ 61,174, at 62,040 (2004) ("*Oglethorpe Order on Reh'g*"). During and subsequent to these proceedings, Oglethorpe continued to make rollover requests -- one on September 25, 2003, and another on September 29, 2004 -- so that the service

agreement between it and Southern is still in effect. *See* Southern Supp. Br. at 7.

Similar circumstances attended Southern's transmission agreement with Williams. In October 2002, Williams requested a rollover of its original one-year service agreement, and Southern filed with FERC an unexecuted rollover agreement that placed limitations on future rollovers. In orders similar to those addressing the Oglethorpe agreement, FERC accepted the filing subject to elimination of the rollover limitations, *see Southern Co. Servs., Inc.*, 102 F.E.R.C. ¶ 61,201 (2003), and then denied rehearing, *see Southern Co. Servs., Inc.*, 104 F.E.R.C. ¶ 61,140 (2003). "Southern's arguments to limit Williams' rollover rights," the Commission said, were "virtually identical to those arguments raised" in the Oglethorpe case, and FERC rejected them for the same reason: the limitations "were not included in the original transmission service agreement." *Southern Co. Servs., Inc.*, 102 F.E.R.C. ¶ 61,201, at 61,591. Unlike Oglethorpe, however, Williams did not make a subsequent rollover request, and the agreement between Southern and Williams expired on December 31, 2003. *See* FERC Br. at 22; Southern Br. at 46 n.23.

Southern now petitions for review of FERC's orders, arguing that they are arbitrary and capricious because Southern had no notice of the "original agreement" requirement when it entered into its original agreements with Oglethorpe and Williams, and that the requirement impairs its ability to provide reliable transmission services.

II

We begin with the question of mootness, as it is a "threshold jurisdictional issue." *Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004).

Southern's challenge to FERC's Oglethorpe orders plainly is not moot, since a rolled-over Oglethorpe agreement remains in effect. The Williams agreement has expired, however, and Southern agrees that there is no live controversy regarding that agreement.

Nonetheless, Southern contends that its challenge to FERC's orders regarding the Williams agreement meets the mootness exception for cases that are "capable of repetition, yet evading review," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). This exception applies if: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Id.* (alterations in original) (internal quotation marks omitted). The burden is on the petitioner to show that these requirements are met. *See Public Utils. Comm'n v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001). Here, we need not examine the second prong because Southern cannot satisfy the first.

In deciding whether challenged actions can be fully litigated prior to their expiration, we have recognized that "orders of less than two years' duration ordinarily evade review." *Burlington N. R.R. Co. v. STB*, 75 F.3d 685, 690 (D.C. Cir. 1996). Southern claims that the Williams orders meet this requirement because the Williams rollover agreement expired after only one year. It also points to a prior challenge to the rollover policy that we dismissed as moot because the agreement at issue there had also expired. *See Southern Co. Servs., Inc. v. FERC*, No. 03-1106, 2003 WL 22669559 (D.C. Cir. Nov. 7, 2003).

This court has emphasized that, when reliance on the mootness exception is based on the short duration of an order, the question is whether such a short duration is "typical" of the controversy. *See In re Reporters Comm. for Freedom of the*

*Press*, 773 F.2d 1325, 1329 (D.C. Cir. 1985); *see also Spencer*, 523 U.S. at 18 (holding that a challenge to a parole revocation did not satisfy the mootness exception because the petitioner "ha[d] not shown . . . that the time between parole revocation and expiration of sentence is always so short as to evade review"). The two instances cited by Williams do not suffice to show that orders regarding rollovers will typically evade review. Southern has not established that rollovers typically last less than two years, or that rollovers are not typically rolled over again for a total duration of more than two years. Indeed, the vitality of Southern's other petition in this very case (its challenge to FERC's Oglethorpe agreement) makes clear that Southern can fully litigate a challenge to FERC's "original agreement" requirement while a rollover agreement -- and FERC's order regarding such an agreement -- remains in effect.

We therefore conclude that Southern has failed to show that FERC actions like the one at issue in Southern's Williams petition will typically evade review. Accordingly, we dismiss the Williams petition as moot and vacate the corresponding FERC orders. *See A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329-30 (1961).[2]

---

[2]Because the only relief Southern has requested is vacatur of the Williams orders and reinstatement of the limitations Southern had placed in the (now expired) Williams rollover agreement, *see* Southern Br. at 50; Southern Reply Br. at 30, we have no occasion to consider whether a challenge to FERC's ongoing policy would have permitted this court to issue declaratory or injunctive relief despite the expiration of the agreement. *Compare Southern Co. Servs., Inc.*, 2003 WL 22669559, at *1 (holding that Southern's challenge to the original agreement requirement as applied to another rollover agreement was moot because the agreement had expired, and that Southern lacked standing to challenge the ongoing requirement itself because it had "not shown that it faces the kind of actual or imminent injury required for Article III standing to pursue such a challenge" (internal quotation

III

Section 313 of the Federal Power Act gives this court jurisdiction to review an order of the Commission only if an aggrieved party files a petition with the court within sixty days of the issuance of the order. *See* 16 U.S.C. § 825*l*(b). FERC contends that the original agreement requirement was part of Order Nos. 888 and 888-A, and that because Southern's petition in this case came years later, its challenge is an untimely collateral attack on those orders. *See City of Nephi v. FERC*, 147 F.3d 929, 934 (D.C. Cir. 1998).

The question of whether Southern is collaterally attacking prior orders depends on whether those orders gave "'sufficient notice'" of the rule to which Southern now objects. *Dominion Res., Inc. v. FERC*, 286 F.3d 586, 590 (D.C. Cir. 2002) (quoting *East Texas Cooperative v. FERC*, 218 F.3d 750, 754 (D.C. Cir. 2000)). As the Supreme Court has recognized, if the challenged order "revised" the prior order, then it can be reviewed; if it is a mere "clarification," then it cannot. *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 286 (1987). We have explained that "self-evidently the calendar does not run until the agency has decided a question in a manner that reasonably puts aggrieved parties on notice of the rule's content." *RCA Global*

---

marks omitted)), *and Entergy Servs., Inc. v. FERC*, 391 F.3d 1240, 1246 (D.C. Cir. 2004) (holding that petitioners do not have standing to challenge FERC's "At or Beyond" rule until "they are confronted with it in a matter before the Commission regarding a 'live' interconnection agreement"), *with City of Houston v. Department of Hous. & Urban Dev.*, 24 F.3d 1421, 1429 (D.C. Cir. 1994) (noting that, "if a plaintiff's specific claim has been mooted, it may nevertheless seek declaratory relief forbidding an agency from imposing a disputed policy in the future, so long as the plaintiff has standing to bring such a forward-looking challenge and the request for declaratory relief is ripe").

*Communications, Inc. v. FCC*, 758 F.2d 722, 730 (D.C. Cir. 1985); *see Sam Rayburn Dam Elec. Coop. v. FPC*, 515 F.2d 998, 1007 (D.C. Cir. 1975) (holding that a petitioner must object "as soon as it could reasonably have become aware of the import" of the order). An objection is considered a collateral attack only if "a reasonable firm in [petitioner's] position 'would have perceived a very substantial risk that the [order] meant' what the Commission now says it meant." *Dominion Res.*, 286 F.3d at 589 (quoting *ANR Pipeline Co. v. FERC*, 988 F.2d 1229, 1234 (D.C. Cir. 1993)).

With these principles in mind, we turn to the orders in this case. FERC's reference to Order No. 888 as a source of the original agreement requirement is unhelpful: although Order No. 888 set forth the right of transmission customers to roll over their contracts, it was not until Order No. 888-A that FERC announced the exception that is at issue in this case. Order No. 888-A allows transmission providers to place certain limitations on customers' rights of first refusal if the limitations are specified "in the contract . . . at the time the contract is executed." Order No. 888-A at 30,198. According to FERC, Southern should have known that "contract" means only the original service agreement, and does not include subsequent rollover agreements.

But there is nothing in the language of the Order No. 888-A exception to put Southern on notice that the "contract" it references is the original service agreement alone. Regardless of whether rollover agreements are new contracts or extensions of the original, there is no doubt that they are themselves "contracts." *See* BLACK'S LAW DICTIONARY 341 (8th ed. 2004) (defining a "contract" as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law"); *cf.* 15 U.S.C. § 3301(12) (using the term "rollover contract" in the natural gas context). As FERC

explained in a 2000 order, "[b]y exercising a right of first refusal an existing transmission customer is, in effect, arranging a new long-term firm point-to-point transmission service." *Entergy Power Mktg. Corp. v. Southwest Power Pool, Inc.*, 91 F.E.R.C. ¶ 61,276, at 61,936 (2000). Nor does the fact that the limitation must be imposed "at the time the contract is executed" suggest that the exception is inapplicable to rollovers, since rollovers -- like original service agreements -- are "executed" by the parties. *See, e.g.*, *Oglethorpe Order on Reh'g* at 62,039 (referring to the Oglethorpe filing as an "executed rollover service agreement").

Moreover, the balance of Order No. 888-A repeatedly uses the term "contract" in contexts that unmistakably encompass rollover agreements. The Order states, for example, that "the Commission reaffirms its decision" to give an existing firm transmission customer "served under a *contract* of one year or more, a reservation priority (right of first refusal) when its *contract* expires." Order No. 888-A at 30,197 (emphases added). Since FERC expressly intends the right of first refusal to apply not just to the original agreement but also to each rollover as it expires, *see, e.g.*, *Southern Co. Servs., Inc.*, 110 F.E.R.C. ¶ 61,191 (2005) (disallowing rollover limitations made in a successive rollover agreement), the word "contract" is plainly used in both senses. Similarly, the pro forma tariff attached to Order No. 888-A (as well as No. 888) states that existing firm service customers "have the right to continue to take transmission service from the Transmission Provider when *the contract* expires, rolls over or is renewed." Order No. 888-A at 30,511 (emphasis added). The fact that "the contract . . . rolls over" makes clear that it remains "the contract" even after rollover. Indeed, the tariff's insistence that the reservation priority "is an *ongoing* right that may be exercised at the end of

*all* firm *contract* terms of one-year or longer," *id.* (emphases added), makes sense only as a reference to repeated rollovers.[3]

FERC maintains that accepting Southern's position would "eviscerate" the right of first refusal, because it would "allow[] providers to restrict rollover rights at the very time when they are to be exercised." FERC Br. at 32. But this unfairly characterizes Southern's argument. Southern does not contend that it can restrict a right of first refusal that is currently being exercised under an agreement that previously had no restrictions. Rather, as is clear in the Oglethorpe filing that FERC rejected, Southern seeks to add a limitation to the rolled-over agreement that would not take effect until the *next* rollover.

Finally, we note that our conclusion is supported by the Notice of Proposed Rulemaking that FERC issued in 2002, which sought to codify the original agreement requirement announced in *Nevada Power*. *See Notice of Proposed Rulemaking*, 100 F.E.R.C. ¶ 61,138, ¶¶ 121-23, app. A. Unlike Order No. 888-A, which states that a provider may "specify *in the contract* that the right of first refusal does not apply to that firm service due to a reasonably forecasted need at the time the contract is executed," Order No. 888-A at 30,198 (emphasis added), the Notice proposed that a "Transmission Provider may decline a Customer the ability to roll over its firm transmission service . . . only if the Transmission Provider includes *in the*

---

[3]The word "contract" is used in the same fashion throughout Order No. 888 as well. *See, e.g.*, Order No. 888 at 31,665 (stating that firm transmission customers have the right to continue to take transmission service "upon the expiration of their contracts or at the time their contracts become subject to renewal or rollover"); *id.* (stating that the right of first refusal "is an ongoing right that may be exercised at the end of all firm contract (including all future unbundled transmission contracts) terms").

*original service agreement* a specific, reasonably forecasted need for the transfer capability to serve load growth at the end of the term of the service agreement." *Notice of Proposed Rulemaking* at app. A (emphasis added). The Notice characterized this and two other changes not just as "clarifications," *id.* ¶ 121, but as "*revisions* [that] have *a significant impact* on the rights of current transmission customers," *id.* ¶ 123 (emphases added), and it "propose[d] to require public utilities to make the tariff *changes* to Section 2.2 of the existing pro forma tariff," *id.* (emphasis added). This characterization of its actions by the agency itself confirms that the original agreement requirement does not derive from Order No. 888-A, but rather constitutes a new FERC policy. *Cf. Kansas Cities v. FERC*, 723 F.2d 82, 86 (D.C. Cir. 1983) (Scalia, J.) (basing jurisdiction in part on FERC's description of its prior order).

We therefore conclude that Southern's objection to the original agreement requirement is not a collateral attack on Order Nos. 888 or 888-A. Accordingly, there is no jurisdictional bar to our considering the merits of FERC's rejection of the rollover limitations that Southern sought to place in the Oglethorpe agreement.

IV

Under the Administrative Procedure Act, we must set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard requires an agency to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).  Moreover, agency action "must be upheld, if at all, on the basis articulated by the agency itself."  *Id.* at 50.

In its initial Oglethorpe order, FERC disallowed the limitations in the rollover agreement solely on the ground that the original agreement requirement had been announced in Order Nos. 888 and 888-A.  *Oglethorpe Order* at 61,370.  "Since issuing Order Nos. 888 and 888-A," FERC said, it had "consistently reaffirmed its policy . . . that a transmission provider can deny a customer the ability to roll over . . . only if the provider *includes in the original service agreement* a specific limitation based on reasonably forecasted native load needs."  *Id.* (emphasis in original).  Because the limiting language "was not in the original service agreement," FERC required Southern to remove it.  *Id.*

In Southern's request for rehearing, the company contended that the original agreement requirement was not contained in Order Nos. 888 and 888-A, but rather was a new policy announced for the first time in *Nevada Power* -- a decision that was not issued until after Southern executed its original service agreement with Oglethorpe.  *Oglethorpe Order on Reh'g* at 62,040.  It would be arbitrary and capricious, Southern argued, to apply a policy that did not exist at the time the parties entered into their original agreement.  Moreover, such application would impede Southern's ability to operate its transmission system reliably.  Southern asked that the new policy be applied, at most, on a prospective basis.  *Id.*

Again, FERC's sole response was that Southern's "claim that the May 2, 2003 Order is based on a change in the Commission's rollover policy that did not exist at the time [Southern] executed its original service agreement with Oglethorpe is in error."  *Id.*  Southern's "request for rehearing,"

FERC said, was "basically a collateral attack on the Commission's rollover rights policy as established in Order No. 888." *Id.* And because FERC believed that Order Nos. 888 and 888-A had given transmission providers adequate notice, it concluded that "any reliability issues that Southern Companies might face would . . . be the result of its failure to follow the requirements" of those Orders to reserve sufficient transmission capacity in the original service agreement. *Id.* at 62,043.

In sum, FERC's orders do not give any reason, other than their insistence that Order Nos. 888 and 888-A put Southern on notice of the original agreement requirement, for denying Southern the right to place limitations in its rollover agreement with Oglethorpe. They offer no rationale for applying the requirement to a rollover when the provider did not know of the requirement at the time it executed the original service agreement. And they make no argument that system reliability can still be assured if the requirement was imposed without adequate notice. Accordingly, because we have concluded that Order Nos. 888 and 888-A did not put Southern on notice of the original agreement requirement, and thus that Southern did not know of the requirement until after it executed its original agreement with Oglethorpe, the agency is left with *no* reason for rejecting Southern's proposed rollover agreement. Because this court "cannot sustain agency action on grounds other than those adopted by the agency in the administrative proceedings," *Macmillan Publ'g Co. v. NLRB*, 194 F.3d 165, 168 (D.C. Cir. 1999) (citing *SEC v. Chenery Corp.*, 318 U.S. 80 (1943)), the absence of a valid rationale renders FERC's Oglethorpe orders arbitrary and capricious. *See, e.g.*, *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1043 (D.C. Cir. 2002).

Finally, we note that this case does not present the question of whether it would be arbitrary and capricious for FERC to apply its original agreement requirement to a case involving an

original agreement executed *after* the requirement was announced in *Nevada Power*. Accordingly, we do not reach that question.

V

For the foregoing reasons, we dismiss Southern's Williams petition and vacate FERC's Williams orders as moot. Further, we grant Southern's Oglethorpe petition and vacate and remand FERC's Oglethorpe orders as arbitrary and capricious.

*So ordered*.