## LOUISIANA PUBLIC SERVICE COMMISSION, Petitioner

v.

## FEDERAL ENERGY REGULATOR COMMISSION, Respondent

**Council of the City of New Orleans, Louisiana, et al., Intervenors.**

No. 07–1228.

United States Court of Appeals, District of Columbia Circuit.

July 6, 2009.

Rehearing En Banc Denied Oct. 8, 2009.

Noel Joseph Darce, Esquire, Michael R. Fontham, Paul Lewis Zimmering, Stone Pigman Walther Wittmann LLC, New Orleans, LA, for Petitioner.

Judith A. Albert, Cynthia Ann Marlette, Beth Guralnick Pacella, Robert Harris Solomon, Esquire, Solicitor, Federal Energy Regulatory Commission (FERC) Office Of The Solicitor, Washington, DC, for Respondent.

Travis Randall Smith, Orlando E. Vidal, Clinton Andrew Vince, Sonnenschein Nath & Rosenthal LLP, William Scott Scherman, Attorney, Clifford M. Naeve, Skadden, Arps, Slate, Meagher & Flom LLP, William Scott Scherman, Attorney, Andrea Jill Weinstein, Entergy Services, Inc., Washington, DC, Mary Woodford Cochran, Paul Randolph Hightower, Ted Joseph Thomas, Arkansas Public Service Commission, Little Rock, AR, George M. Fleming, Mississippi Public Utilities Staff, Jackson, MS, for Intervenors.

Before: HENDERSON, TATEL and GRIFFITH, Circuit Judges.

### *JUDGMENT*

This case was considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments of the parties. It is

ORDERED AND ADJUDGED that the petition is denied. The Louisiana Public

Service Commission (LPSC) petitions for review of the Federal Energy Regulatory Commission's (FERC) acceptance of a compliance filing by five affiliated Entergy Operating Companies ("Entergy"), *see La. Pub. Serv. Comm'n v. Entergy Serv., Inc. et al.*, 117 F.E.R.C. ¶ 61,203 (2006); *La. Pub. Serv. Comm'n v. Entergy Serv. Inc.*, 119 F.E.R.C. ¶ 61,095 (2007). The filing at issue was made in compliance with FERC Opinion No. 480, *La. Pub. Serv. Comm'n*, 111 F.E.R.C. ¶ 61,311 (2005) (*Opinion No. 480* ), and Opinion No. 480–A, *La. Pub. Serv. Comm'n v. Entergy Serv., Inc.*, 113 F.E.R.C. ¶ 61,282 (2005) (*Opinion No. 480–A* ), in which FERC adopted the Administrative Law Judge's ruling that the Entergy system had fallen out of rough production cost equalization, *La. Pub. Serv. Comm'n v. Entergy Serv., Inc.*, 106 F.E.R.C. ¶ 63,012, 65,109–13 (2004), and ordered a remedy to restore the required rough equalization. LPSC now challenges three aspects of Entergy's compliance filing: (1) the inclusion of so-called "interruptible loads" in the calculation of production costs; (2) the pricing of energy from the Vidalia hydroelectric plant based on the average price Entergy Louisiana paid to purchase energy from the Entergy system rather than the overall average price of all purchases from the system; and (3) the timing of payments under the bandwidth remedy. The first two challenges come too late; the third comes too early.

■ LPSC argues that the compliance filing improperly included interruptible loads in violation of the parties' agreement that the outcome of a different FERC proceeding would control this issue. That proceeding eventually excluded interruptible loads from certain cost calculations, *see La. Pub. Serv. Comm'n v. Entergy Serv., Inc.*, 106 F.E.R.C. ¶ 61,228 (2004) (*Opinion No. 468* ); *La. Pub. Serv. Comm'n v. Entergy Serv., Inc.*, 111 F.E.R.C. ¶ 61,080

(2005) (*Opinion No. 468–A* ). But LPSC should have raised this argument in petitioning for rehearing of Opinion No. 480, not in response to Entergy's filing in compliance with that opinion. Opinion No. 480 itself required Entergy to calculate production costs based on Exhibit ETR–26, which included interruptible loads. *Opinion No. 480*, 111 F.E.R.C. at 62,354. Opinion No. 480 provided sufficient notice that interruptible loads would be included: it relied on Exhibit ETR–26 in determining that the system was not in rough production cost equalization; it required future calculations to be based on this same exhibit; and it did so in the concluding paragraph of a section addressing "Whether the Entergy System is Currently in Rough Production Cost Equalization," *id.* at 62,-351–54, indicating that Exhibit ETR–26's methodology applied to all aspects of the rough equalization analysis. A "reasonable firm in [LPSC's] position" thus "would have perceived a very substantial risk that the order meant what the Commission now says it meant." *S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 45 (D.C.Cir. 2005) (internal quotation marks and brackets omitted).

LPSC next argues that FERC should have rejected the compliance filing's pricing method for the Vidalia hydroelectric plant. According to LPSC, the compliance filing departs from the method approved in Opinion No. 480. Again, LPSC should have raised this objection in challenging Opinion No. 480, not in objecting to the later compliance filing. Contrary to LPSC's claim that in Opinion No. 480 FERC meant to price Vidalia energy at the average rate paid by all sources under schedule MSS–3, Opinion No. 480 expressly relies on Exhibit ETR–26, which, like the compliance filing, priced Vidalia at the average MSS–3 rate paid by Entergy Louisiana only. The exhibit's sponsor described this methodology during the Opin-

ion No. 480 proceeding: "The [analysis in Exhibit ETR–26] re-prices the Vidalia purchases to what they would have been had the price been equal to the average cost per kWh *incurred by [Entergy Louisiana]* incident to *its* 'purchases' under the MSS–3." *La. Pub. Serv. Comm'n,* 117 F.E.R.C. at 61,999 n. 27 (emphasis added) (quoting Ex. ETR–23 at 41–42). Moreover, as evidenced by LPSC counsel's questioning of a witness in the Opinion No. 480 proceeding, LPSC apparently was aware of this methodology as early as August 2003, nearly two years prior to Opinion No. 480. *See* Tr. at 4560:3–14, *La. Pub. Serv. Comm'n,* 111 F.E.R.C. ¶ 61,311 (No. EL01–88–001) (reflecting LPSC counsel's question to witness whether the cost of Vidalia energy "was derived by using the average annual MSS–3 rate paid by [*Entergy Louisiana*]" (emphasis added)).

 Finally, LPSC challenges the delay until June 2007 of payments to remedy the system's lack of rough equalization. But as FERC points out, it has yet to issue a final ruling on the timing of the remedy— the issue remains pending before FERC on remand from our decision in *Louisiana Public Service Commission v. FERC,* 522 F.3d 378, 399–400 (D.C.Cir.2008) (finding insufficient FERC's determination that a 2005 implementation date would entail impermissible refunds and that the first calendar year after June 2005 was the most appropriate and equitable time for implementing the remedy and remanding for further proceedings and explanation). In-

deed, LPSC acknowledges that FERC's decision in the remand proceedings could render the issue LPSC raises here moot. Petr.'s Opening Br. 56. Moreover, as FERC counsel expressly agreed at oral argument, LPSC will be able to raise its objections to the June 2007 payment date in those proceedings. Oral Arg. at 25:19–26:10. Absent sufficiently final agency action on the timing of the remedy, and given FERC's concession that it will treat as preserved LPSC's objections to the June 2007 payment date, we agree with FERC that the issue of the remedy's timing is not presently ripe for judicial review. *See La. Pub. Serv. Comm'n,* 522 F.3d at 397 (ripeness inquiry requires evaluation of "hardship to the parties of withholding court consideration" and "fitness of the issues for judicial decision," including "whether the agency's action is sufficiently final" (internal quotation marks omitted)).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing en banc. *See* FED. R.APP. P. 41(b); D.C.CIR. R. 41.