## CALIFORNIA DEPARTMENT OF WATER RESOURCES, Petitioner,

v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

California Independent System Operator Corporation, et al., Intervenors.

No. 01–1234.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 2002.

Decided Oct. 18, 2002.

Edna Walz, Deputy Attorney General, Attorney General's Office of State of California, argued the cause for petitioner. With her on the briefs were Bill Lockyer, Attorney General, Richard M. Frank, Chief Assistant Attorney General, and Elisa J. Grammar. Mary E. Hackenbracht, Senior Assistant Attorney General, Attorney General's Office of State of California, and Peter C. Kissel entered appearances.

Michael Postar argued the cause for intervenors M–S–R Public Power Agency and the Cities of Redding, Santa Clara, and Palo Alto, California. On the briefs were Wallace L. Duncan, James D. Pembroke, Richmond F. Allan, and Sean M. Neal.

Beth G. Pacella, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were Cynthia A. Marlette, General Counsel, and Dennis Lane, Solicitor.

Jennifer L. Key, Kenneth G. Jaffe, and Michael E. Ward were on the joint brief for intervenors California Independent System Operator Corporation and Southern California Edison Company. Richard L. Roberts and Edward Berlin entered appearances.

Before: SENTELLE and RANDOLPH, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The first and, as it turns out, the last question we must decide in this petition for judicial review of an order of the Federal Energy Regulatory Commission is whether we have jurisdiction.

California Independent System Operator Corporation (the California ISO) operates a grid comprising the transmission systems of several public utilities that have turned over operational control of their facilities to it. *See Pub. Utils. Comm'n v. FERC*, 254 F.3d 250, 252–53 (D.C.Cir. 2001). Entities with firm contractual rights to transmissions generated by these public facilities (contractual rightsholders) may also join the California ISO by assigning their contractual rights to the ISO's control. ISO Revised Tariff § 2.4.4.1.2. Public utilities and contractual rightsholders joining the California ISO are called transmission owners. Under the ISO's regulations, transmission owners are required to develop pricing mechanisms.[1] ISO Revised Tariff § 7.1. Through these pricing mechanisms, the California ISO compensates transmission owners for the transmissions they convert to the ISO's control and sets the prices customers pay for transmissions. *Id.*

On May 3, 1999, the Commission issued an order conditionally approving Amendment 9, a proposal by the California ISO for the provision of firm transmission

---

1. The pricing mechanisms are a Transmission Revenue Requirement, which is the total annual authorized revenues turned over to the California ISO; a Transmission Revenue Balancing Account, which ensures that all credits a transmission owner receives are subtracted from its Transmission Revenue Requirement; and an Access Charge, which is the price a transmission owner charges customers. ISO Tariff § 7.1; *see generally* California ISO Second Revised Sheet No. 354.

rights (May Order). *California Indep. Sys. Operator Corp.*, 87 F.E.R.C. ¶ 61,143, 1999 WL 259874 (1999). Under Amendment 9, the ISO auctions transmission paths that are subject to congestion. 87 F.E.R.C. at 61,570. Auction revenues are distributed to the transmission owner that owns, or has contractual rights to, the auctioned transmission paths. *Id.* Transmission owners receiving auction revenues are required to deduct these revenues from the costs they seek to recoup from the California ISO. *Id.* The Commission specifically held that the May Order did not address "the exercise of conversion rights (which permits Existing Customers to convert to ISO Tariff service[) ]." *Id.* at 61,581.

The petitioner in this case, the California Department of Water Resources (the Water Department), is a contractual rightsholder that has firm transmission contracts with Pacific Gas & Electric and Southern California Edison. The Water Department anticipates joining the California ISO as a transmission owner. On June 2, 1999, the Water Department sought rehearing of the May Order, arguing that contractual rightsholders should not be required to develop and use ISO pricing mechanisms because they do not apply to contractual rightsholders. The Water Department's logic was as follows: (1) the ISO pricing mechanisms are calculated by determining the costs of providing transmissions, ISO Tariff § 7.1; (2) because contractual rightsholders receive transmissions from other transmission providers, contractual rightsholders do not have costs associated with transmissions; therefore (3) the Water Department, and other contractual rightsholders, should not be required to develop and use ISO pricing mechanisms. *California Indep. Sys. Oper-*

*ator Corp.*, 88 F.E.R.C. ¶ 61,156, at 61,527–28, 1999 WL 562833 (1999). On August 2, 1999, the Commission granted the Water Department's rehearing petition (August Order). *Id.* at 61,528.

The California ISO and Southern California Edison Company filed an application for rehearing of the August Order, contending that because the California ISO compensates transmission owners for their costs and prices transmission charges based upon the ISO pricing mechanisms, contractual rightsholders that join the California ISO must develop ISO pricing mechanisms to avoid "severely skew[ing] the cost allocation system under the California ISO tariff." *California Indep. Sys. Operator Corp.*, 94 F.E.R.C. ¶ 61,343, at 62,269, 2001 WL 306488 (2001). On March 28, 2001, the Commission granted the California ISO's and Southern California Edison's petition for rehearing (March Order). *Id.*

In a related proceeding, on November 10, 1999, in response to questions regarding the jurisdictional status of transactions under the California ISO's proposal, the Commission issued an opinion holding that pursuant to section 205 of the Federal Power Act, 16 U.S.C. § 824d, the Commission has jurisdiction over the sale of transmission rights. *California Indep. Sys. Operator Corp.*, 89 F.E.R.C. ¶ 61,153, at 61,435, 1999 WL 1025490 (1999). The Cities of Redding, Santa Clara, and Palo Alto, California, and the M–S–R Public Power Agency (Redding), sought rehearing of this decision, arguing that the Commission had impermissibly attempted to assert jurisdiction over municipalities in violation of section 201(f) of the Federal Power Act.[2] The Commission denied Redding's petition

---

**2.** Section 201(f) provides, in relevant part: "No provision in this subchapter shall apply to ... any political subdivision of a State ... unless such provision makes specific reference thereto." 16 U.S.C. § 824(f).

for rehearing on March 28, 2001. 94 F.E.R.C. at 62,270–71.

Without seeking rehearing of the March Order, the Water Department filed this petition for judicial review of the March, August and May Orders, arguing that the Commission's decision requiring it to develop and use ISO pricing mechanisms was not based upon substantial evidence. The Water Department also contends that the Commission cannot exercise jurisdiction over it because it is a transmission customer, not a utility owner. *See* 16 U.S.C. § 824(b). Redding intervened in support of the Water Department, raising the same argument Redding presented in its petition for rehearing before the Commission.

■ Section 313(a) of the Federal Power Act provides that a "state commission aggrieved by an order issued by the Commission ... may apply for a rehearing." 16 U.S.C. § 825*l*(a). It further provides that "no proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for rehearing thereon." *Id.* The rehearing requirement is an "express statutory limitation[ ] on the jurisdiction of the court." *Tennessee Gas Pipeline Co. v. FERC,* 871 F.2d 1099, 1107 (D.C.Cir.1989); *see also Granholm ex rel. Michigan Dep't of Natural Resources v. FERC,* 180 F.3d 278, 280 (D.C.Cir.1999). Neither the court nor the Commission has the discretion to ignore it. *See Granholm,* 180 F.3d at 280–81; *see also Bluestone Energy Design, Inc. v. FERC,* 74 F.3d 1288, 1293 (D.C.Cir.1996); *Town of Norwood, Mass. v. FERC,* 906 F.2d 772, 774 (D.C.Cir.1990).

■ As we have interpreted § 313(a), if an order on rehearing modifies the results of the earlier order in a significant way adverse to a party, that party must seek a rehearing of the order before filing a petition for judicial review. *See Norwood,* 906 F.2d at 775. This gives the Commission "an opportunity to bring its knowledge and expertise to bear" on the petitioner's objections before they are presented to the court; if the objections are well-founded, Commission action on the rehearing request may obviate judicial proceedings. *Northwest Pipeline v. FERC,* 863 F.2d 73, 77–78 (D.C.Cir.1988); *Granholm,* 180 F.3d at 280.

■ The Water Department concedes that the March Order, in which the Commission reversed its position regarding whether the Water Department must use ISO pricing mechanisms, significantly modified the August Order. It maintains, though, that the March Order did not significantly modify the May Order because it merely reinstated the aggrievement the Water Department suffered from the May Order.[3] The idea must be that in determining whether there was enough of a change to require a rehearing petition, one must compare the original order with the last order, ignoring whatever orders issued in between. We doubt that our precedents support this approach. But even if they did, the March Order cannot be viewed as making only a minor alteration to the May Order. In its May Order, the Commission conditionally approved the California ISO's proposal regarding firm transmission rights, and nothing more. The Water Department's alleged injury stems not from the May Order, but from the Commission's

---

**3.** Our use of the term "aggrievement" is for convenience and is not meant to imply that the Water Department has in fact been aggrieved. The Water Department is not a member of the California ISO, which the Commission claims deprives it of standing to challenge the March Order. We do not resolve this particular standing question. *See Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 585, 119 S.Ct. 1563, 1570–71, 143 L.Ed.2d 760 (1999).

decision in its March Order that contractual rightsholders must develop ISO pricing mechanisms. The March Order thus significantly altered legal relationships and gave rise to the grievance the Water Department now presses in court. *See Norwood,* 906 F.2d at 775. Even if we had jurisdiction and agreed with the Water Department's arguments that it should not be required to develop California ISO pricing mechanisms, this would have no bearing on the May Order approving Amendment 9.

Given these circumstances, there is no possibility of "an endless cycle of applications for rehearing and denial." *Southern Natural Gas Co. v. FERC,* 877 F.2d 1066, 1073 (D.C.Cir.1989). In *Southern Gas,* the court held that a petitioner did not need to seek a rehearing of a Commission order denying rehearing when the outcome had not been changed but the Commission had "supplie[d] a new improved *rationale.*" *Id.* (emphasis in original). Here, the March Order directed an outcome significantly different from the May and August Orders, not the same outcome with a new rationale. The *Southern Gas* court explicitly stated that in such a situation the rehearing requirement under § 313(a) begins anew.[4] *Id.*

■■■ The Water Department also sought judicial review of the May and August Orders, but we do not have jurisdiction over those orders either because the Water Department plainly does not have standing to contest them. A party claiming to be aggrieved within the meaning of § 313(a) must satisfy the constitutional requirements for standing. *See Public Utility Dist. No. 1 of Snohomish County, Washington v. FERC,* 272 F.3d 607, 613 (D.C.Cir.2001). One such requirement is that a party suffer an "injury-in-fact." *Id.*

As is clear from the preceding discussion, neither the May Order nor the August Order aggrieved the Water Department. The May Order merely approved Amendment 9 without binding the Water Department to any of the pricing schemes that it currently challenges, and in the August Order the Commission decided in its favor. The Water Department suffered "injury-in-fact" from neither of these orders.

■■■ As to the intervenors, "absent extraordinary circumstances, intervenors 'may join issue only on a matter that has been brought before the court by'" a petitioner. *Alabama Mun. Distribs. Group v. FERC,* 300 F.3d 877, 879 (D.C.Cir.2002) (quoting *Illinois Bell Tel. Co. v. FCC,* 911 F.2d 776, 786 (D.C.Cir.1990)). An exception to this rule is that an intervenor may raise an issue if the intervenor has preserved the issue in its own petition for rehearing before the Commission, and the intervenor satisfies the statutory requirements for a petitioner to seek judicial review of the Commission's order. *See Alabama Mun.,* 300 F.3d at 880; *see also Rio Grande Pipeline Co. v. FERC,* 178 F.3d 533, 539 (D.C.Cir.1999) (intervenors must seek direct review to raise additional issues). Neither situation is present here. The Water Department, toward the end of its brief, mentions in a footnote that 16 U.S.C. § 824(f) precludes the Commission from exercising jurisdiction over political subdivisions of a state; the footnote adds that the provision has no "direct applicability" to it, but shows congressional intent. The Water Department's footnote does not properly present, and thus does not preserve, the issue the intervenors wish to argue. *See Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983). Although Redding raised the arguments it

---

4. *Southern Gas* construed § 19(b) of the Natural Gas Act. That provision is analogous to § 313(a). *See Norwood,* 906 F.2d at 774.

makes in court in its petition for rehearing before the Commission, Redding did not satisfy the statutory requirements for judicial review. Petitioners must seek review "within sixty days after the order of the Commission upon the application for rehearing." 16 U.S.C. § 825*l*(b). Redding intervened on June 25, 2001—eighty-nine days after the Commission entered its March 28, 2001 order.

The petition for judicial review is therefore dismissed for lack of jurisdiction. We also have no jurisdiction to consider the intervenors' contentions regarding the merits.

*Dismissed.*