# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 20, 2008            Decided July 22, 2008

No. 05-1401

PACIFIC GAS AND ELECTRIC COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

CALIFORNIA ELECTRICITY OVERSIGHT BOARD, ET AL.,
INTERVENORS

———

Consolidated with
06-1422

———

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

———

*Frank R. Lindh* argued the cause for petitioner. With him on the briefs was *Keith T. Sampson.*

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, *Robert H. Solomon*, Solicitor, and *Beth G. Pacella*, Senior Attorney.

*Wallace LaMar Duncan*, *Sean M. Neal*, and *Derek Anthony Dyson* were on the brief for intervenor Modesto Irrigation District.

Before: TATEL, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Pacific Gas & Electric Company (PG&E) petitions for review of Federal Energy Regulatory Commission (FERC) orders that require the California Independent System Operator, rather than Participating Transmission Owners like PG&E, to conduct interconnection studies when a new electric generator seeks to interconnect with the electric transmission grid. PG&E contends that the orders violate § 206 of the Federal Power Act. But PG&E's petition, while cloaked in the guise of a challenge to the orders below, is in fact an impermissible collateral attack on a series of orders that FERC issued in 2003 and 2004. We therefore dismiss the petition for review.

I

In its Order No. 888, FERC laid the foundation for the development of competitive wholesale power markets by requiring public utilities to offer nondiscriminatory open access transmission services. *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 680-81 (D.C. Cir. 2000), *aff'g Promoting Wholesale Competition Through Open Access Nondiscriminatory Transmission Services by Public Utilities*, Order No. 888, FERC Stats. & Regs. ¶ 31,036, 61 Fed. Reg. 21,540 (1996). The Order required all transmission-owning utilities to provide access to their transmission lines to any entity generating or purchasing electricity in the interstate market on the same terms as the utilities use their own lines. *Id.* at 681. To

effectuate this reform, "FERC adopted a pro forma Open Access Transmission Tariff (OATT), containing minimum terms and conditions for non-discriminatory service, which every transmission-owning public utility must file with the Commission and by which it must abide in providing transmission services to itself and others." *Id.* at 727.

As one means of complying with Order No. 888, FERC encouraged public utilities "to participate in Independent System Operators (ISOs)." *California Indep. Sys. Operator Corp. v. FERC*, 372 F.3d 395, 397 (D.C. Cir. 2004). As we have explained:

> An ISO conducts the transmission services and ancillary services for all users of such a system, replacing the conduct of such services by the system owners -- that is, the integrated electric utilities whose market power FERC was attempting to control by encouraging the creation and operation of the ISOs. In order to accomplish that purpose, FERC deems it crucial that an ISO be independent of the market participants so that decisions of policy, operation, and dispute resolution be free of the discriminatory impetus inherent in the old system.

*Id*. (citing Order No. 888, FERC Stats. & Regs. ¶ 31,036, at 31,731). The California electric power industry responded in part by restructuring its market and establishing the California Independent System Operator ("California ISO" or "CAISO"). *See Pacific Gas & Elec. Co.*, 81 F.E.R.C. ¶ 61,122, at 61,435-36 (1997).

In the period immediately after the Commission issued Order No. 888, FERC monitored one element of open access transmission service -- interconnection agreements between

operators of generators and transmission facilities -- on a case-by-case basis. *National Ass'n of Regulatory Util. Comm'rs v. FERC (NARUC)*, 475 F.3d 1277, 1279 (D.C. Cir. 2007). In its 1997 proceedings regarding the establishment and implementation of the California ISO, for example, the Commission considered, inter alia, whether "Participating Transmission Owners [PTOs] should have the exclusive right to perform Facilities Studies" necessary for interconnection, or whether the California ISO should "be made the coordinator for all expansion projects," including any necessary studies. *Pacific Gas & Elec. Co.*, 81 F.E.R.C. at 61,487-88. At that time, the Commission concluded that the PTOs should retain responsibility for performing such studies. *Id.* at 61,489.

The case-by-case approach, however, produced an increasing number of interconnection-related disputes, and, in its Order No. 2003, FERC concluded that this approach was "an inadequate and inefficient means to address interconnection issues." *Standardization of Generator Interconnection Agreements and Procedures*, Order No. 2003, 104 F.E.R.C. ¶ 61,103, at ¶ 10 (2003). "In the interests of achieving transparency and preventing transmission facility owners from favoring affiliated generators over independents in interconnection," the Commission decided to "require all transmission facilities to adopt a standard agreement for interconnecting with generators larger than 20 megawatts." *NARUC*, 475 F.3d at 1279. FERC's Order No. 2003 series required all public utilities that own, control, or operate facilities used for transmitting electricity in interstate commerce to file revised open access transmission tariffs that include *pro forma* Large Generator Interconnection Procedures and a *pro forma* Large Generator Interconnection Agreement, unless the Commission approved a utility's request for a regional variance from the standard terms. Order No. 2003, 104 F.E.R.C. at ¶¶ 2, 26.

Among other things, Order No. 2003's *pro forma* procedures address interconnection studies, which are performed to evaluate a proposed interconnection in detail, identify any adverse system impacts, and specify any facility modifications needed to complete the interconnection safely and reliably. *Id.* at ¶ 36. The procedures provide that the interconnection studies will "be performed by, or at the direction of, the Transmission Provider." *Id.* In California, the Transmission Provider is the California ISO, which exercises operational control over the facilities owned by the California PTOs, including PG&E, Southern California Edison Company, and San Diego Gas & Electric Company. *See California Indep. Sys. Operator Corp.*, 112 F.E.R.C. ¶ 61,009, at 61,022 (2005) ("First Order on Review"); PG&E Br. 16, 57. In its orders on rehearing of Order No. 2003, FERC clarified various aspects of the *pro forma* procedures, including the requirement that interconnection studies be performed by the Transmission Provider. *See generally* Order No. 2003-A, 106 F.E.R.C. ¶ 61,220 (2004); Order No. 2003-B, 109 F.E.R.C. ¶ 61,287 (2004); Order No. 2003-C, 111 F.E.R.C. ¶ 61,401 (2005). This court upheld the Order No. 2003 series against an unrelated challenge in *NARUC*, 475 F.3d 1277.

PG&E submitted its initial Order No. 2003 compliance filing in January 2004, and made an amended filing to comply with Order Nos. 2003 and 2003-A in January 2005. It submitted its Order No. 2003-B compliance filing in February 2005. *See* First Order on Review, 112 F.E.R.C. at 61,022. Those filings proposed that, instead of having the Transmission Provider conduct the interconnection studies, each affected PTO would continue to conduct the studies in its own service territory. *Id.* at 61,028. In its First Order on Review, FERC rejected that proposal. "With each affected PTO conducting system studies," FERC said, "a generator could be required to coordinate and pay for studies conducted by all three PTOs instead of having one

set of studies that would examine the effect of the interconnection and additional generation on the CAISO grid as a whole." *Id.* FERC was concerned that, if "the interconnecting PTO continues to conduct the studies, there is a risk that separate transmission investments will work at cross-purposes and possibly even hurt reliability." *Id.* It also declared that "allowing the PTOs to conduct the studies undermines the very independence on which the Commission relies." *Id.* FERC therefore held that "CAISO must adopt a centralized study process, in which CAISO itself conducts the studies." *Id.*

In subsequent orders, the Commission held that the PTOs may participate in the interconnection studies and retain review and recommendation rights, but that they generally may not conduct the studies or retain consent rights over them. *See California Indep. Sys. Operator Corp.*, 112 F.E.R.C. ¶ 61,231, at 62,136-37 (2005) ("Second Order on Review"); *California Indep. Sys. Operator Corp.*, 115 F.E.R.C. ¶ 61,237, at 61,873-74 (2006) ("Third Order on Review"); *California Indep. Sys. Operator Corp.*, 117 F.E.R.C. ¶ 61,148, at ¶¶ 60-71 (2006) ("Fourth Order on Review"). The Commission again repeated its concern that "CAISO must manage its . . . system study process so that an interconnecting generator is not unduly burdened by coordinating multiple studies with the PTOs." Second Order on Review, 112 F.E.R.C. at 62,136. And it rejected PG&E's claim that, in requiring the California ISO rather than the PTOs to perform the interconnection studies, the Commission violated Federal Power Act § 206. FERC concluded that this claim was, among other things, "an impermissible . . . collateral attack on Order No. 2003." Third Order on Review, 115 F.E.R.C. at 61,874; *see* Fourth Order on Review, 117 F.E.R.C. at ¶¶ 69-70.

PG&E now seeks review of FERC's First through Fourth Orders.

## II

PG&E contends that the orders below, which require that the California ISO rather than the PTOs must perform interconnection studies, violate § 206 of the Federal Power Act because FERC did not first find that the then-existing practice, in which PTOs performed the studies, had become "unjust, unreasonable, unduly discriminatory or preferential." 16 U.S.C. § 824e(a); *see Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 10 (D.C. Cir. 2002). FERC responds that the requirement that the ISO perform the studies was first announced not in the orders below, but rather in the Order No. 2003 series, which PG&E did not challenge on that ground. FERC contends that PG&E's petition is therefore foreclosed because it is a collateral attack on the Order No. 2003 series.

Section 313(b) of the Federal Power Act permits a party to obtain review of a FERC order in this court by filing a petition within sixty days after the Commission's denial of rehearing. 16 U.S.C. § 825*l*(b). We have repeatedly held that the sixty-day limitations provision is jurisdictional. *Williston Basin Interstate Pipeline Co. v. FERC*, 475 F.3d 330, 334 (D.C. Cir. 2006) (citing *Nephi, Utah v. FERC*, 147 F.3d 929, 933-34 (D.C. Cir. 1998)); *Sacramento Mun. Util. Dist. v. FERC*, 428 F.3d 294, 298-99 (D.C. Cir. 2005); *cf. Georgia Indus. Group v. FERC*, 137 F.3d 1358, 1363-64 (D.C. Cir. 1998) (discussing the Natural Gas Act's parallel limitations provision). With few exceptions, a challenge made outside of the statutory period is a collateral attack over which we have no jurisdiction. *See Sacramento Mun. Util. Dist.*, 428 F.3d at 299.[1]

---

[1]One such exception applies when an order is not final because it leaves an issue contingent on subsequent compliance proceedings. *See Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 398 (D.C. Cir. 2008). PG&E does not assert that FERC's decision in the Order

In Order No. 2003, FERC ruled that, as part of the *pro forma* interconnection procedures, "Interconnection Studies [are] to be performed by, or at the direction of, the Transmission Provider." Order No. 2003, 104 F.E.R.C. at ¶ 36. Order No. 2003-A reiterated this requirement, affirming that, for facilities under the operational control of an ISO, "Interconnection Studies and transmission planning remain the providence of the Transmission Provider." Order No. 2003-A, 106 F.E.R.C. at ¶ 785. And Order No. 2003-B made it clear that the "ISO conducts all studies . . . and controls all aspects of the interconnection process." Order No. 2003-B, 109 F.E.R.C. at ¶ 80 n.25. Because the plain language of these orders requires that interconnection studies be performed by the Transmission Provider, and because PG&E agrees that the California ISO is the Transmission Provider in California, *see* PG&E Br. 16, 57, we conclude that it was the Order No. 2003 series that announced the requirement that the ISO is required to perform the studies.

If PG&E objected to that requirement, it therefore had to petition for review in this court no later than sixty days after December 20, 2004 -- the date the Commission issued Order No. 2003-B, which was the last order on rehearing that addressed the requirement. *Cf. Louisiana Pub. Serv. Comm'n v. FERC*, 522 F.3d 378, 398 (D.C. Cir. 2008) (holding that non-conditional FERC orders are ripe for review notwithstanding the expectation that there will be subsequent compliance proceedings); *Wisconsin Pub. Power Inc. v. FERC*, 493 F.3d 239, 266 (D.C. Cir. 2007) (same). PG&E did not file such a petition. Thus, PG&E's effort to challenge the centralized study requirement through its current petition appears to be a time-barred collateral attack over which we have no jurisdiction.

---

No. 2003 series was conditional, and we do not think it was.

III

PG&E offers two principal reasons why its challenge to the requirement that the ISO perform interconnection studies is not an impermissible collateral attack on the Order No. 2003 series. We address each argument in turn.

1. PG&E first invokes -- albeit obliquely -- the exception to the sixty-day limitations provision that permits a late challenge to a Commission rule if the order that established it did not give a party "'sufficient notice' of the rule to which [it] now objects." *Southern Co. Servs., Inc. v. FERC*, 416 F.3d 39, 44-45 (D.C. Cir. 2005) (quoting, inter alia, *Dominion Res., Inc. v. FERC*, 286 F.3d 586, 590 (D.C. Cir. 2002)); *see Sacramento Mun. Util. Dist.*, 428 F.3d at 299. PG&E argues that, "[a]t most the various notices and orders in the rulemaking docket appeared to *assume* that the 'Transmission Provider' would conduct system studies and construct any needed facilities." PG&E Br. 57 (emphasis added). "[S]tatements of this kind," it insists, "do not constitute fair notice that in California -- where the California ISO is the 'Transmission Provider' -- the Commission intended to have the Participating Transmission Owners relinquish their longstanding responsibility for interconnection studies." *Id.*

As we noted in Part II, Order No. 2003 states that "Interconnection Studies [are] to be performed by, or at the direction of, the Transmission Provider." Order No. 2003, 104 F.E.R.C. at ¶ 36. And Order No. 2003-A repeats the point, stating that, "while the Transmission Owner is a necessary part of interconnecting to a facility under the operational control of an . . . ISO, . . . Interconnection Studies . . . remain the providence of the Transmission Provider." Order No. 2003-A, 106 F.E.R.C. at ¶ 785. The suggestion that these statements did not provide adequate notice of the requirement that

interconnection studies must be run by the California ISO rather than the PTOs is belied by PG&E's concession that, "[b]y its literal terms, Order No. 2003 required that the 'Transmission Provider' perform interconnection studies," PG&E Br. 16, coupled with its recognition that, "in California[,] . . . the California ISO is the 'Transmission Provider,'" *id.* at 57; *see id.* at 16; Joint Compliance Filing at 3 (J.A. 54); Revised Joint Compliance Filing at 3, 14 (J.A. 84, 95).[2]

The inadequate notice contention is also belied by the compliance filings made in the proceedings below. Those filings conceded that the *pro forma* procedures require that interconnection studies be performed by the Transmission Provider -- i.e., the ISO -- and that PG&E and the other PTOs would need a variance from those procedures to permit the PTOs to perform the studies. *See* Revised Joint Compliance Filing at 18 (J.A. 99) (noting that the parties had "revised the FERC *pro forma* [agreement]" with respect to the roles of the ISO and the PTOs); Revised CAISO Compliance Filing at 17 (J.A. 123) ("With regard to the ISO Controlled Grid, the ISO is the Transmission Provider, but not the Transmission Owner. Thus, the [*pro forma* interconnection procedures] necessarily

---

[2]Because the Order No. 2003 series defined the term "Transmission Provider" to "include[] the Transmission Owner as well," Order No. 2003, 104 F.E.R.C. at ¶ 75; *see* Order No. 2003-A, 106 F.E.R.C. at ¶ 84, it might be argued that Order Nos. 2003 and 2003-A permit PTOs, as well as the ISO, to perform interconnection studies. PG&E did not make this argument before the Commission, and, in this court, it agrees that the Transmission Provider in California is CAISO. We therefore do not consider the argument. *See* 16 U.S.C. § 825*l*(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so."); *California Dep't of Water Res. v. FERC*, 306 F.3d 1121, 1125 (D.C. Cir. 2002).

must be changed to reflect the respective roles of the ISO and the PTOs in the provision of Interconnection Service."); *see id.* at 22, 24 (J.A. 128, 130) (proposing a number of modifications to the *pro forma* procedures necessary "to adapt them to the ISO's circumstances," including that the PTOs conduct the studies in the first instance).[3]

Indeed, by the time this case reached oral argument, PG&E no longer claimed that the Order No. 2003 series had failed to put it on notice that ISOs in general would have to conduct the studies.  *See* Oral Arg. Recording at 12:57-13:58.  Rather, PG&E merely contended that it read Order No. 2003 to contain an implied exception for the California ISO, since California had a preexisting, approved practice under which the PTOs performed the studies.  *Id.* at 14:20-38.  But whether or not it was possible to read Order No. 2003 as containing an "implicit" exception, that is hardly a warrant for failing to challenge the Order's explicit statement that the studies were to be conducted by the Transmission Provider.

In any event, Order No. 2003-B makes any notice argument -- and any argument that the study requirement was a mere "assumption" -- untenable.  That order flatly states that the "ISO conducts all studies . . . and controls all aspects of the interconnection process."  Order No. 2003-B, 109 F.E.R.C. at ¶ 80 n.25; *see id.* at ¶ 80 ("[T]he Transmission Owner *must* agree to transfer to the . . . ISO control over the significant aspects of the interconnection process[,] . . . including the performance of

---

[3]PG&E does not argue here that FERC's refusal to grant its request for a variance -- an option provided for in Order No. 2003, *see* 104 F.E.R.C. at ¶ 26 -- was arbitrary or capricious.

all Interconnection Studies." (emphasis added)). Given this clarity, PG&E's inadequate notice argument must fail.[4]

2. PG&E also argues that, even if Order No. 2003-B did clarify the centralized study requirement, it came too late to provide adequate notice because PG&E had already submitted its compliance filings for Order Nos. 2003 and 2003-A by the time Order No. 2003-B issued. This argument is of little assistance to PG&E because, as we have just explained, Order Nos. 2003 and 2003-A themselves provided adequate notice. Nor is it a persuasive argument even with respect to 2003-B. Although PG&E filed its initial Order No. 2003 compliance filing before FERC issued Order No. 2003-B on December 20, 2004, it did not submit its revised compliance filing with respect to Order Nos. 2003 and 2003-A until January 5, 2005 -- some two weeks after Order No. 2003-B issued -- and it did not file its Order No. 2003-B compliance filing until more than a month after that. Moreover, the Commission did not release the first order at issue in this case until July 1, 2005. *See* First Order on Review, 112 F.E.R.C. at 61,022. PG&E has suggested no reason why, even if it had not been on notice of the centralized study requirement until FERC issued Order No. 2003-B, a

---

[4]PG&E also raises a separate notice argument under the notice-and-comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553. It contends that interested parties were not provided with notice and an opportunity to comment on a proposal that interconnection studies must be conducted by the Transmission Provider, "as no such proposal appeared in the various orders leading up to the adoption of" Order No. 2003. PG&E Br. 36. This is not just a collateral attack on Order No. 2003; it is a direct attack. And because the time for such attacks has long since expired, we cannot hear it. Moreover, PG&E's failure to raise this objection with FERC in the proceedings in this case creates a second bar to our consideration. *See* 16 U.S.C. § 825*l*(b); *California Dep't of Water Res.*, 306 F.3d at 1125.

challenge to that Order would not have been in time to put its objections before the Commission.

## IV

For the foregoing reasons, we conclude that PG&E's petition for review of the orders below is an impermissible collateral attack on the earlier Order No. 2003 series. We therefore dismiss the petition for lack of jurisdiction.

*So ordered.*